## PERKINS LUMBER COMPANY *v.* WILKINSON.

Equity will not enjoin the enforcement of an unambiguous contract on the ground that, by mistake and inadvertence of the scrivener, it was not made to express the real agreement between the parties, without first reforming the instrument, under appropriate pleadings, to make it speak the truth.

Submitted February 13, — Decided March 13, 1903.

Injunction.    Before Judge Evans.    Tattnall superior court, November 5, 1902.

*James K. Hines*, for plaintiff in error.
*J. A. Brannen* and *Hinton Booth*, contra.

CANDLER, J.    The petition of the plaintiff in the court below alleged that he was the owner of a tract of land in Bulloch county, containing two thousand and forty-six acres, more or less, which was described by its boundaries; that on a named day he "sold the sawmill timber on said land to the Perkins Lumber Company, at the rate of two dollars per acre, the number of acres of timber land on said tract to be ascertained by actual survey before the last payment fell due;" that at the time of the sale all this timber was in use for turpentine purposes, except about thirty acres, immediately in front of and around his residence, and "that he did not sell the said thirty acres to, nor point out the same to, the said Perkins Lumber Company, nor their agent, but reserved the same." It was alleged that, "at the time said title was made,  .  . by mistake and inadvertence the small tract of round timber above set out and described was not expressly excepted in said writing," but that in his negotiations with the agents of the defendant for the sale of the timber, he "pointed out to said agents the land included in said contract," and "never at any time pointed out said tract of round timber to said agents as being included therein; and petitioner says that he never sold, nor did he ever undertake to sell, said tract of round timber to said defendants, nor would he have sold same at any price."    The petition set up that the tract of timber in question was valuable to him, not alone as timber, but as furnishing shade and as adding to the healthfulness and enhancing the beauty of his premises; that the defendant was about to enter upon it and cut it, and that irreparable injury would thereby result to him.    He prayed for process and for general equitable re-

lief, and that the defendant, its officers, agents, and employees, "be enjoined and restrained from entering upon, surveying, cutting, or in any wise interfering with the said timber." There was no prayer for a reformation of the instrument which was alleged to imperfectly express the intention of the parties to the contract. The answer of the defendant denied the material allegations of the petition, and set up a counter-claim against the plaintiff. On the hearing the evidence was directly conflicting as to the understanding and the verbal agreement between the parties in the negotiations for the sale of the timber. The plaintiff swore positively that the thirty acres in dispute was reserved in him; the agents and officers of the lumber company flatly contradicted him. The timber lease introduced in evidence expressly conveyed "all the timber suitable for sawmill purposes on" the tract of land first referred to in the petition. At the conclusion of the evidence the court granted the injunction prayed, and the defendant excepted.

With the exception of one sentence, there is nothing in the petition to indicate that the plaintiff below claimed that the instrument by which he conveyed the timber to the Perkins Lumber Company was ambiguous. The sentence referred to is as follows: "Petitioner further shows that under the description in the deed made to said defendant the boundaries of said land are indefinite, and your petitioner holds that, under a fair and proper interpretation of the same, this body of round timber would not and could not be included in said deed." It is worthy of remark, however, that the alleged indefinite description contained in the deed is identical with the description given in the petition. It affirmatively appears, from the plaintiff's own allegations, that the thirty acres now in dispute was a part of the tract conveyed by the deed and described in the petition. The case made by the plaintiff is, not that the deed was susceptible of more than one construction, but that, owing to mistake and inadvertence, the scrivener failed to except from the timber conveyed by the deed that contained on this thirty-acre tract, thereby causing the instrument to speak other than the real intention of the parties. Whatever ambiguity there may have been in the deed which was introduced in evidence was entirely cleared away by the allegations of the petition; and we will, therefore, disregard the argument of counsel that the relief prayed for was properly granted under the power of the court to

construe and give effect to an ambiguous writing.    It is a well-settled principle of equity jurisprudence that to maintain an action to enjoin the commission of a tort to property, the plaintiff must show a clear title to the property in himself.    3 Pom. Eq. Jur. (2d ed.) §§ 1347, 1350.    The plaintiff in the court below made out a case which, if found to be true, would plainly give him the right to have the title to the property in dispute put in himself by means of a reformation of his deed to the defendant; but so long as that deed remains unchanged, its terms must control any question as to the title to the property it purports to convey.    As before stated, the description contained in the conveyance is not ambiguous.    The language is: " All the timber suitable for sawmill purposes on a certain lot, tract, or parcel of land . . containing 2,046 acres more or less," which is described by boundaries exactly as it is described in the petition.    The petition also shows affirmatively that the thirty acres containing the timber in dispute is a part of this tract of 2,046 acres, and it is admitted that the timber growing thereon is suitable for sawmill purposes.    Manifestly, then, as the conveyance now stands, the plaintiff in error has a legal right to go upon this thirty-acre tract and cut the timber; and to prevent it from doing so, at the same time leaving the title as it is, would be to enjoin it from the exercise of a legal right while recognizing the validity of that right.    Equity follows the law; it does not defy it. It modifies the application of legal rules in accordance with equitable principles, but it does not in one breath recognize a legal right and violate it.    It will reform a writing and then give effect to it as reformed; but it will not commit the absurdity of leaving it as it is, admitting its binding force, and yet decreeing that it shall have no force.    As the case now stands, the plaintiff in error has a valid legal title which has never been successfully attacked, but the enjoyment of which has been denied it.    What is to prevent it from going into a court of law and enforcing its contract regardless of the injunction granted against it ?    It can easily be seen that the result would be a confusion of litigation, which it is one of the main objects of courts of equity to prevent.    It follows that, in the absence of a prayer in the petition for a reformation of the instrument conveying the timber, the court erred in granting an injunction.                    *Judgment reversed.    By five Justices.*