## SHAW v. FENDER et al.

1. Where a landowner conveys the standing timber of a specified size, without limitation as to the use to which it is to be appropriated, the grantee may use it for any lawful and ordinary purpose.
(a) A conveyance of standing timber of a specified size, without restriction as to its use upon the land, authorizes the grantee to box the trees for the purpose of producing turpentine.
2. Equity will not enjoin the enforcement of an unambiguous contract on the ground that, by mistake of the scrivener, it was not made to express the real agreement between the parties, without first reforming the instrument under appropriate pleadings.
3. As the petitioner alleged that the defendants were cutting and boxing trees of less size than that which was conveyed in the timber lease, it was error to dismiss the petition.
4. Penal Code § 226, denouncing as a misdemeanor the cutting of timber on uninclosed land without a recorded deed, or written contract from the grantee of a recorded deed, does not deprive a defendant in possession, with full purchase-money paid (but without written contract) from showing that the plaintiff conveyed to the defendant's vendor the timber upon which the alleged trespass was done, and that by reason of this conveyance the plaintiff has no interest in the timber to protect.
APRIL 10, 1912.

Equitable petition. Before Judge Thomas. Berrien superior court. March 3, 1911.

F. M. Shaw brought his equitable petition against W. L. Fender and L. D. Carter, alleging, that he was the owner of a described tract of land, and that the defendants were cutting into the timber thereon for the purpose of producing turpentine; and he prayed for an accounting of past operations and an injunction against further trespass. On February 19, 1903, he conveyed the timber to the Massee & Felton Lumber Company, under an instrument the material parts of which are as follows: This indenture between F. M. Shaw Sr., of the first part, and the Massee & Felton Lumber Company, of the second part, witnesseth, that the party of the first part, in consideration of $700, "has granted, bargained, sold, remised, and leased, and by these presents does grant, bargain, sell, remise, and lease, to the said Massee & Felton Lumber Company, its successors and assigns, all and singular the timber on the following described lots and parcels of land. . . This lease grants exclusive privileges, but timber is not to be cut down less than 14 inches at the stump. The timber hereby leased and conveyed being 350 acres of timber more or less. To have and to hold the said described [timber], with all the rights, members, and appur-

tenances thereunto appertaining or belonging, to the only proper use, benefit, and behoof of the said Massee & Felton Lumber Company, its successors and assigns. It is hereby covenanted by and between the parties hereto that the said Massee & Felton Lumber Company, its successors and assigns, are to have free, full, and undisturbed use and enjoyment of the said timber, including the right to cut and remove the said timber from said lands within ten years from date. And the said Massee & Felton Lumber Company, its successors and assigns, shall have the right to construct, occupy, and operate all necessary tramroads, roads, tenant-houses, sawmill, and other temporary structures during the period aforesaid, with the right to remove the same at any time before the expiration of said term. And the said party of the second part shall have the right of way over said lands, and the right and privilege of entering upon and occupying the same so far as may be necessary in the cutting and removing of said timber. And the said party of the first part, for his heirs, executors, and administrators, the right and title to the said timber and the free and uninterrupted use and enjoyment of said timber, including the use of the land for timber purposes, during the term aforesaid, unto the said Massee & Felton Lumber Company, its successors and assigns, against the party of the first part, his heirs, executors, administrators, and all other person or persons whatsoever, will warrant and defend by virtue of these presents."

The plaintiff alleged, that the description of the height of the timber at the stump is ambiguous, and was intended to mean "but timber is not to be cut down less than 14 inches at the stump two feet from the ground, for sawmill purposes only," and this ambiguity was the result of accident and mistake in drafting the deed; that the timber lease did not authorize the Massee & Felton Lumber Company or their assigns to conduct turpentine operations; that the defendants had entered upon the land and cut into a large portion of the trees about 3850 turpentine boxes, forty per cent. of which were cut into trees under the gauge of 14 inches at the usual and customary stump height; that the defendants in cutting the turpentine boxes did not cut all the timber growing upon the land suitable for turpentine and sawmill purposes, and by reason of this fact, when the sawmill timber has been removed from the land, that portion of the turpentine timber left will be so scattered

as. to render it unsalable for turpentine purposes, whereas, had it been permitted to remain upon the land without any portion of it being cut for turpentine purposes, plaintiff could have easily marketed it for $600, the reasonable value thereof; that the cutting of the timber and farming of the same for turpentine purposes frequently breeds disease in the timber, which spreads not only in the timber cut for turpentine, but into the smaller timber left standing upon the land; that if the defendants are permitted to continue to farm the timber upon the land for turpentine purposes, which they manifest that they intend to do, it will cause petitioner irreparable damages, for the reason that the several injuries arising therefrom can not be estimated in damages, and a multiplicity of actions will result upon the constantly recurring acts of trespass being committed by the defendants in farming the timber for turpentine purposes.

The defendants filed their answer. Demurrers were filed to both the petition and answer, which were sustained by the court, and both parties excepted.

*Hendricks & Christian,* for plaintiff.

*E. K. Wilcox,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. An owner of land may grant an estate in trees growing upon his land. He may by apt words create an absolute estate in them (*North Georgia Co. v. Bebee,* 128 *Ga.* 563, 57 S. E. 873), or he may grant an estate terminable upon the grantee's failure to cut and remove the timber within a limited time. *Morgan* v. *Perkins,* 94 *Ga.* 353 (21 S. E. 574); *Shippen* v. *Gates,* 136 *Ga.* 37 (70 S. E. 672). But whether the grant be of an absolute or a defeasible estate in growing timber, the estate conveyed is an interest in realty, and includes all the appurtenances of the grant. The title to the timber passes by the grant, and the grantee may put the timber to any use he sees proper. Even in the case of a grant of "all and singular the timber for turpentine and sawmill purposes, growing on" described land, it was held that the purchaser could use it for cross-ties or firewood or for any other purpose which he saw proper. *Gray Lumber Co.* v. *Gaskins,* 122 *Ga.* 342 (50 S. E. 164). The right of an owner of property to put it to any lawful use is one of the incidents of the ownership of it. A vendor of timber in the sale of it may limit the use to which

the vendee may put it while it is on his land; in such a case the limitation is upon the estate granted. With these principles in mind we will examine the deed sub judice, with a view to ascertaining whether the grantees were restricted in using the pine timber conveyed for only sawmill purposes. In the first place the deed conveys "all and singular the timber" on described land, except that "timber is not to be cut down less than 14 inches at stump," to the grantees and their assigns. We think it clear, both from the phraseology of the exception and its insertion in the part of the. deed descriptive of the property conveyed between the granting and tenendum clauses, that the exception operates only to define the property sold, and is neither a limitation on the estate conveyed nor a restriction upon the use to which the timber is to be put by the grantees. The grantor sold and conveyed all the timber of the size of 14 inches and upwards at the stump. The deed contains several covenants by the grantor: one is to the effect that the grantees and their assigns are to have the free, full, and undisturbed use and enjoyment of the timber, including the right to cut and remove the timber from the land within ten years, with the right to construct tramways, roads, tenant-houses, sawmill, and other temporary structures, subject to removal by the grantees before the expiration of the time stipulated. In this covenant the grantor recognizes that his grant does not limit the use of the timber for sawmill purposes, but is more extensive; for he expressly covenants that the grantees and their assigns shall have the full and undisturbed use and enjoyment of the timber, including the right to cut and remove, etc. The timber was granted, and this covenant relates to the specification of certain rights conferred upon the grantees in putting it to a particular use. And the covenant following also relates to the same particular use. The warranty of title, which is "to the said timber and the free and uninterrupted use and enjoyment of said timber, including the use of the land for timber purposes during the time aforesaid," indicates that the sale was of the timber without any restriction upon the use of it by the grantee or his assigns. We are, therefore, of the opinion that the grantees took an estate in the timber of the specified dimension, determinable upon their failure to cut and remove it within ten years, and during that time the grantees had the right to cut and box the pine trees with the object of extracting the gum to be manufactured into turpentine.

2. It is alleged in the petition that the expression in the deed, "but timber is not to be cut down less than 14 inches at stump," is ambiguous, and that the true intention and purpose of the expression was to mean "but timber is not to be cut down less than 14 inches at the stump two feet from the ground, for sawmill purposes only," and that the ambiguity exists by reason of an accident or mistake in the drafting of the deed. The defendants demurred specially to this paragraph of the petition, and moved to strike it, because it was an attempt to engraft by parol a restriction upon the estate granted. The grantee of the deed is not a party to the cause, and there is no prayer for the reformation of the deed. It may be shown by parol testimony what is the usual stump height for cutting timber. When the parties omitted to state the stumpage height in the deed, it is to be understood that they contracted with reference to the usual and customary rule in that particular. But an attempt to limit the use of the property conveyed by parol proof involves an entirely distinct proposition. As the deed is written it is unambiguous, and equity will not enjoin the enforcement of an unambiguous contract on the ground that by mistake of the scrivener it was not made to express the real agreement between the parties, without first reforming the instrument under appropriate pleadings. *Perkins Lumber Co.* v. *Wilkinson,* 117 *Ga.* 394 (43 S. E. 696). The special demurrer to this paragraph was well taken.

3. But it was error to strike the petition on general demurrer, as it was distinctly alleged that the defendants had cut for turpentine use many trees of less size than 14 inches at the usual stump height, that they were "working" these undersized trees, and that the acts of the defendants in this respect, for the reasons stated, would result in irreparable injury, and were recurring trespasses. The plaintiff is entitled to recover of the defendants damages for the injury occasioned by the cutting of the undersized trees, and to enjoin them from repeating the trespass upon them. *Gray Lumber Co.* v. *Gaskins,* supra.

4. In their answer the defendants aver, that they claim title to the turpentine privileges in the timber 14 inches in diameter and upwards at the stump, and the right to use and work the boxes therein under the deed from the plaintiff to the Massee & Felton Lumber Company, and under and by virtue of a contract of sale

between the Massee & Felton Lumber Company and the defendant Fender; that while the Massee & Felton Lumber Company never in fact executed and delivered to Fender a written lease in accordance with their contract, they accepted the purchase-price for the turpentine privileges, and, having received the same, consented for the defendant Fender to take possession of the timber for the purpose of boxing and using it for turpentine purposes, and as a result thereof a perfect and complete equitable title to the timber for turpentine purposes, with the right to use and work the same, was vested in him. Other defensive matter was pleaded. The plaintiff demurred specially and generally to the answer, and the court sustained the demurrer "upon the ground that the answer of the defendant shows that the defendant has no recorded lease to the interest involved, and has no written contract from any one who does hold such lease, authorizing defendants to use the timber." The cross-bill of exceptions complains of this ruling. The court predicated his ruling upon the Penal Code § 226, which declares it shall be a misdemeanor for any person to enter or cut or remove from any uninclosed land any timber, unless such person shall, before so doing, have on record in the county where the land lies a deed of conveyance to the same, prima facie showing title to such land, or shall have a written contract from such person, who has a recorded deed, prima facie showing title in him. This code section has no application to the present case. It simply denounces as a misdemeanor the act declared in the statute. It confers no right of action upon one who has no title to the timber, to recover from a violator of the statute the value of the timber cut or removed. Indeed the statute relates to the cutting and removal of timber, and is of doubtful application to turpentine operations. But even if turpentine operations be comprehended, the plaintiff must show title to the timber before he can recover for any trespass to the same or its appurtenances. As the title to the timber passed out of the plaintiff by virtue of his deed to the Massee & Felton Lumber Company, he has no interest in the timber to protect. The defendants cut and boxed the timber with the consent of its owner, and were not trespassers. *Gaston* v. *G. & D. Ry. Co.*, 120 *Ga.* 516 (48 S. E. 188). Besides, the defendant has a perfect equitable title as against the Massee & Felton Lumber Company, so far as the right to work the timber for turpentine is concerned. Civil Code

(1910), § 4634. And as the plaintiff is estopped by his grant from claiming the timber from his grantee, likewise is he estopped from asserting title to the timber or its appurtenances against his grantee's vendee in possession with full purchase-price paid. It was error for the court to sustain the demurrer on the ground stated in the judgment.

*Judgment reversed on both bills of exceptions. All the Justices concur.*