## McRae v. Smith.

HINES, J. 1. The subject-matter of the grant is "all the sweet red gum timber" upon the described tract of land, and includes all trees standing on the land that were suitable, at the time of the grant, for use in the manufacture of lumber or material for building, manufacturing, and kindred purposes, but does not embrace sprouts and saplings. *Vandiver v. Byrd-Matthews Lumber Co.,* 146 *Ga.* 113 (90 S. E. 960).

2. A conveyance in 1917 of "all sweet red gum timber" included only those trees which were then suitable for the above purposes, and not those which by growth subsequently became suitable for the above purposes. *Allison v. Wall,* 121 *Ga.* 822 (6) (49 S. E. 831).

3. Where the landowner conveys "all the sweet red gum timber" on a described tract of land, without any limitation as to the use to which it is to be appropriated, the grantee may use it for any purpose he may see fit. *Gray Lumber Co. v. Gaskin,* 122 *Ga.* 342 (50 S. E. 164); *Shaw v. Fender,* 138 *Ga.* 48 (74 S. E. 792); *Red Cypress Lumber Co. v. Beall,* 5 *Ga. App.* 202 (62 S. E. 1056).

4. Equity will not enjoin the enforcement of an unambiguous contract for the sale of "all the sweet red gum timber" upon a described tract of land, on the ground that the sale of the timber was for a specific purpose, and that an assignee of the purchaser was cutting and removing it to be used for another purpose, without first reforming the instrument under proper pleadings and evidence. *Shaw v. Fender, supra.*

---

Appeal and Error, 3 C. J. p. 602, n. 40; p. 1365, n. 85; 4 C. J. p. 717, n. 28, 29; p. 718, n. 33; p. 916, n. 31.

Injunctions, 32 C. J. p. 142, n. 41; p. 428, n. 82, 83.

Judgments, 34 C. J. p. 52, n. 42; p. 54, n. 48.

Logs and Logging, 38 C. J. p. 159, n. 62; p. 162, n. 90, 1; p. 184, n. 49, 53 New.

5. The cutting and removal of timber from forest lands is a destructive trespass, and one liable in its nature to cause irreparable damage to the owner of the timber. Where, under the grant of "all the sweet red gum timber" on a described tract of land, an assignee of the purchaser is cutting and removing saplings and trees which do not come within the designation of timber, as used in such grant, an injunction will issue to restrain such a trespass, where it is a continuing one which will result in denuding the land of such saplings and trees and destroying the value of the freehold. *Camp* v. *Dixon*, 112 *Ga.* 872 (38 S. E. 71, 52 L. R. A. 755); *Gray Lumber Co.* v. *Gaskin*, supra; *Moore* v. *Daugherty*, 146 *Ga.* 176 (2) (91 S. E. 14).

6. Where a petition was filed for the purpose of enjoining the cutting and removal of timber to which the defendant was not entitled under the contract of purchase between him and the plaintiff, and where on interlocutory hearing it was shown that the trespass was continuing and would denude the forest lands of saplings and trees which would in the future be valuable as timber, and was thus destroying the value of the freehold, if the presiding judge reached the conclusion that the plaintiff had established her right to an injunction, it was error to allow the injunction or restraining order to be dissolved upon the giving of a bond by the defendant to answer to any recovery of damages which the plaintiff may obtain on the final trial. *Wethington* v. *Baxter*, 124 *Ga.* 1024 (53 S. E. 505); *Hart* v. *Lewis*, 126 *Ga.* 439 (55 S. E. 189); *Stewart* v. *Davis-Sears Lumber Co.*, 132 *Ga.* 205 (63 S. E. 817); *Gray* v. *Guthrie*, 134 *Ga.* 273 (67 S. E. 799); *Baggerly* v. *Bainbridge State Bank*, 160 *Ga.* 556 (4), 563 (128 S. E. 766); *Durrence* v. *Groover*, 160 *Ga.* 680, 682 (129 S. E. 29).

7. In the cross-bill of exceptions error is assigned on an alleged judgment of the trial judge overruling the demurrer of the defendant to the petition. It is recited that "The general demurrer was likewise considered by the court and overruled, but the court inadvertently failed to reduce to writing the judgment overruling the general demurrer." It does not appear that any judgment in writing was taken, overruling the demurrer to the petition. What the judge orally declares is no judgment until it has been put in writing and entered as such. *Freeman* v. *Brown*, 115 *Ga.* 23, 27 (41 S. E. 385); *Alexander* v. *Chipstead*, 152 *Ga.* 851, 861 (111 S. E. 552); *Conley* v. *Pope*, 161 *Ga.* 462 (3) (131 S. E. 168). As no judgment in writing overruling the demurrer to the petition was entered, the assignment of error thereon in the cross-bill of exceptions presents no question for decision by this court.

8. The trial judge passed an order temporarily restraining and enjoining the defendant from cutting, felling, and removing timber from the premises of the plaintiff: provided, however, should the defendant file with the clerk of the court a good bond to be approved by the clerk, payable to the plaintiff, and conditioned to pay her any judgment that might be rendered in her favor in this case, then in such event the defendant should be allowed and permitted to cut, fell, and remove any and all of the timber on said land that will measure not less than fourteen inches in diameter three feet from the ground. The defendant does not except to the grant of this injunction, but does except to so

much of said judgment as provided for the giving of said bond. The bill of exceptions recites that counsel for defendant stated that if the defendant was so required, he would be willing to give such bond. *Held:*

(*a*) As counsel stated on the hearing that his client was willing to give this bond, if required, he can not now complain that the judge permitted him to do so.

(*b*) But as we have held, on the main bill of exceptions, that the court erred, as against the plaintiff, in permitting the defendant to give this bond, this requirement does not require a reversal of the judgment under the cross-bill, even if the defendant were in position to except to the portion of the judgment providing for the giving of this bond.

*Judgment reversed in part on the main bill of exceptions; judgment affirmed on the cross-bill. All the Justices concur.*

Nos. 5577, 5603.    MARCH 17, 1927.

Injunction, etc. Before Judge Graham. Montgomery superior court. July 17, 1926.

On December 17, 1917, Mrs. Mamie E. McRae, by written indenture under seal, sold and leased to the Southern Lumber & Timber Co. "all the sweet red gum timber" upon a described tract of land. Under the lease the lessee was to have free, full, and undisturbed use and enjoyment of said timber, including the right to cut and remove the same from said lands within fifteen years from the date of the lease. On April 30, 1926, Southern Lumber & Timber Company transferred and assigned, in writing, "its entire right and title to the" above "lease to J. Wade Johnson;" and on May 5, 1926, Johnson transferred and assigned all his right, title, and interest in and to said lease, together with all title and rights thereby conveyed, to G. C. Smith. Mrs. McRae filed her petition against Smith, to enjoin him from cutting the small sweet or red gum saplings and trees on said land. In her petition she makes the following allegations: At the time said lease was executed the Southern Lumber & Timber Company was engaged in the manufacture of veneering and allied products from sweet or red gum timber, and it was understood between the parties that said company was purchasing said timber for the purpose of manufacturing the same into veneering and like products. She only sold to said company such sweet or red gum timber as was suitable for the purpose of manufacturing therefrom veneering and allied products, and the title under said lease passed to only such sweet or red gum timber as was suitable for such purposes at that time. Said company or its subsidiaries entered upon the tract of land upon which said timber was situated, and

during the years 1918 and 1919 cut and removed therefrom all the sweet or red gum timber to which it was entitled under said lease; and after cutting and removing all of said timber to which it was entitled under such lease, it moved its logging camp from said land and to other lands several miles away from this land, and then abandoned the remainder of the sweet or red gum timber growing on her tract of land. The defendant has recently entered upon her land, and has begun to cut and remove therefrom the small sweet or red gum saplings and trees, title to which did not pass under said lease, and which were abandoned by the Southern Lumber & Timber Company; and he is now manufacturing out of said small sweet or red gum saplings and trees barrel-staves, and declares it to be his purpose to entirely strip said tract of land of all sweet or red gum saplings or trees growing thereon, which were not, on December 17, 1917, suitable for the purpose of manufacturing veneering and allied products, but which were then suitable for the purpose of manufacturing barrel-staves, as well as such saplings or trees which have by natural growth since December 17, 1917, become suitable for manufacturing into barrel-staves. If the defendant continues to cut and remove such sweet or red gum saplings or trees, he will inflict upon petitioner and said freehold irreparable injury and damage. If such saplings and trees are permitted to remain on the land, they will grow very rapidly, and in a few years more will grow to be of such dimensions as will render them suitable for the manufacture of merchantable lumber and allied products; but if cut and removed now for manufacture into barrel-staves, it will amount to an act of waste. The defendant has already damaged her $1,000 or other large sum; and if permitted to cut and remove said saplings and trees from said land until he has stripped it of all sweet or red gum saplings or trees, as he declares it is his purpose to do, he will injure her in the sum of $5,000. She prays that the defendant be enjoined from entering upon said land and from cutting and removing therefrom any of the sweet red gum saplings or trees, and that she recover of the defendant the sum of $1,000 as damages already done.

The defendant demurred generally and specially to the petition. He also filed his answer in which he denied that he was cutting any timber not embraced in the lease from the plaintiff to the South-

ern Lumber & Timber Company, to whose rights he succeeded by the successive transfers of the lease of the plaintiff to said company to all the sweet red gum timber embraced therein. He claimed the right to cut all such timber for any purpose which he might choose, as there was no limitation in the lease upon the uses to which the timber could be put. On the trial of the application for injunction, it was admitted that the plaintiff was the owner in fee simple of the land on which the timber in dispute is located. The execution of the lease and the transfers thereof, under which the defendant claims the right to cut and remove this timber, were admitted. The plaintiff introduced evidence tending to prove that the Southern Lumber & Timber Company, or its subsidiaries, had cut and removed all of said timber which was on said land at the date the lease was executed. She deposed by affidavit that she had sold said timber to said company for veneering purposes; that it was not her purpose to lease or sell to said company saplings and small trees growing on the land at the time she executed said lease, which were not of sufficient size to be used for veneering and allied products; that after said company had cut and removed said timber, it removed its logging camp from the land; that at that time said company or its subsidiaries had cut all the sweet red gum timber growing on said land, suitable for veneering or allied products, and said company moved away and abandoned said land and timber; that the defendant entered upon said land and began cutting the sweet red gum saplings and small trees thereon and manufacturing them into staves; and that these saplings and trees were not conveyed by the lease. She also introduced evidence tending to prove that seventy-five per cent. of the trees already cut by the defendant measured from ten to fourteen inches in diameter; that W. W. Pierce, representing the lessee or its subsidiary, during the years 1918, 1919, and 1920, cut all of the sweet red gum timber growing on said land that would measure sixteen inches or above in diameter; that sweet or red gum trees grow very rapidly, and will increase one inch in diameter each year; that sweet red gum timber, to be classed as merchantable, had to be not less than sixteen inches in diameter two or three feet from the ground, and a tree measuring less than sixteen inches in diameter such distance from the ground was not classed merchantable; that prior to December 17, 1917, no mill or manufacturing plant used sweet

red gum timber in manufacturing lumber or building material or veneering and allied products, except in large centers of population, as the expense of cutting and transporting such lumber was so large as to render it unprofitable to cut and ship a tree that would measure less than sixteen inches in diameter, and at said date there was no sawmill or veneering mill using sweet red gum timber, nearer to Mount Vernon than Macon, Georgia.

The defendant introduced evidence tending to prove that the Southern Lumber & Timber Company was not engaged in the manufacture of veneer, and did not purchase said timber for such purpose; that there is little, if any, of the timber on said land that has become merchantable by reason of growth since the execution of said lease; that there are large quantities of the variety of timber covered by the lease still on said land and purchased under said lease; and that timber eight inches in diameter, three feet from the ground, was merchantable.

The trial judge granted an interlocutory injunction, restraining the defendant as prayed, but providing that the defendant, upon giving bond to answer to the plaintiff for any damages which she might sustain, could cut any of the timber coming within the terms of said lease, not measuring less than fourteen inches in diameter three feet from the ground. To this judgment the plaintiff excepted. In a cross-bill of exceptions, the defendant complained that the court erred in overruling his demurrer to the petition (it being recited that "the general demurrer was likewise considered by the court and overruled, but the court inadvertently failed to reduce to writing the judgment overruling the general demurrer"), and of so much of the judgment as provided for the dissolution of the injunction upon his giving bond.

*M. B. Calhoun* and *L. C. Underwood,* for plaintiff.

*J. Wade Johnson,* for defendant.