BROAD RIVER LUMBER CO. v. MIDDLEBY et al.

(Circuit Court of Appeals, Fourth Circuit.   February 7, 1912.)

No. 1,038.

1. LOGS AND LOGGING (§ 2*)—"TIMBER."
    Generally the word "timber," as used in a contract selling standing timber, unless modified or controlled by other expressions, in the contract means such trees as are fit to be used in buildings or similar construction; that is, trees of a size fit to be used in the construction of dwellings or ships; trees too small to be used for these purposes, not, strictly speaking, being considered as timber, although their products are utilizable for the construction of interior work in dwellings, or for the manufacture of tools and other appliances.
    [Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 1–5; Dec. Dig. § 2.*
    For other definitions, see Words and Phrases, vol. 8, pp. 6972, 6973 7816.]

2. LOGS AND LOGGING (§ 2*)—"MERCHANTABLE TIMBER."
    The term "merchantable timber," within a contract to sell land warranted to contain 100,000,000 feet of "merchantable timber," while not limited to timber that could be reduced to board measure and manufactured into lumber at a profit, is limited to timber capable of being measured in board feet when sawed or cut for the purpose of utilization.
    [Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 1–5; Dec. Dig. § 2.*
    For other definitions, see Words and Phrases, vol. 5, pp. 4489–4490.]

3. EVIDENCE (§ 591*)—CONCLUSIVENESS.
    On an issue as to the quantity of timber on land, defendant's own testimony binds him.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2440–2443; Dec. Dig. § 591.*]

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

Bill by the Broad River Lumber Company against Katherine Middleby and others.   From a decree dismissing the bill, complainant appeals.   Modified.

E. J. Justice (Justice & Broadhurst, on the brief), for appellant.

William P. Bynum and R. C. Strudwick (J. J. McCarthy, on the brief), for appellees.

Before GOFF, Circuit Judge, and CONNOR and SMITH, District Judges.

SMITH, District Judge.   On the 17th of December, 1906, J. Middleby, Jr., and Katherine Middleby, his wife, executed a deed of conveyance to the Broad River Lumber Company of several parcels of land in the counties of Rutherford, Cleveland, Burke, and McDowell, in the state of North Carolina, which several tracts were warranted in the conveyance to contain not less than 20,000 acres.   The conveyance also included a certain amount of personal property, viz., mules, oxen, wagons, carts, traction engines, with three sawmills, machinery,

engine, and boilers, and everything belonging thereto. The deed of conveyance further contained this covenant:

"It is further understood and agreed between the parties to this deed that the said parties of the first part warrants and guarantees that there shall be not less than one hundred million feet of merchantable standing timber on the land hereinbefore described. If there should be less than one hundred million feet of such merchantable timber, then the parties of the first part bind themselves, their heirs and assigns to pay to the said party of the second part, its successors or assigns, the sum of $2.00 per thousand feet for such deficiency. Or if there shall be an excess of one hundred million feet of standing merchantable timber on the said lands, then the said party of the second part hereby binds itself, its successors and assigns to pay to the said parties of the first part, their heirs or assigns the sum of $2.00 per thousand feet for such excess."

The purchase price of all the property mentioned in the deed of conveyance was $150,000, of which $10,000 was paid in cash, and the balance was represented by notes for the aggregate of $140,000, which was secured by a mortgage which was executed on the same day as the deed of conveyance. The proceeding before the court was initiated by a bill of complaint in equity alleging that the land conveyed contained much less than 100,000,000 feet of merchantable standing timber, in fact contained, as alleged in the bill of complaint, only 64,000,000 feet, and the complainants therefore claimed that they were entitled to a credit of $2 per thousand feet upon the deficiency, or a credit of $72,000 upon the notes given for the credit portion of the purchase money. The proceedings having been completed by answer and replication, on the 6th of October, 1907, a consent decree was entered requiring the complainants to pay all the credit portion of the purchase money secured by the mortgage, including the note maturing February 1, 1908, with interest, leaving still unpaid $75,000 of the principal of the notes as secured by the mortgage. The consent decree further provided that the case should remain upon the docket as a cause in equity in order to determine the amount of merchantable standing timber on the land at the time of the sale, to wit, October 1, 1906, and it was referred to a master to take the testimony and report his findings of fact and conclusions of law to the court. The consent decree further provided that, if there should be found a deficit under 100,000,000 feet, then judgment was to be entered against the defendant for such deficit at the rate of $2 per thousand feet, and be credited on the amount unpaid of the purchase money. If the deficit should be greater than the balance of the purchase money unpaid, then it should be applied to the payment of the balance of the purchase money unpaid, and whatever amount of the judgment was in excess of the purchase money unpaid should be entered as a judgment against the defendant, and, if there should be found to be an excess over 100,000,000 feet of timber on the said land, the defendant Middleby was to have judgment against the lumber company for the amount of such excess.

The effect of this consent decree was to put an end to all other questions in the cause and leave open simply the determination of the question as to the amount of merchantable standing timber on the land at the time of the sale, to wit, October 1, 1906. For any

deficit under 100,000,000 feet the plaintiff was to have judgment against the defendant at the rate of $2 per thousand feet. For any excess over 100,000,000 feet the defendant was to have judgment against the lumber company for the amount of such excess at the same rate. In effect, therefore, the only question for determination was the amount of merchantable standing timber on the land on October 1, 1906. The master to whom it was referred to take testimony and report found that the definition of merchantable standing timber as contained in the covenant of warranty set out in the deed of conveyance meant saleable standing timber and did not include any standing timber so defective or so inaccessibly located, all the lands being considered together, as to render it unprofitable to handle the standing timber measured in board feet, and that estimated under this definition there was a deficiency of 53,000,000 feet of merchantable standing timber. On exceptions to the finding of the special master the case was heard by the trial judge below, who overruled the master on this point and held that the term was sufficiently broad and comprehensive to include all timber as it stands in the forest, which can be manufactured into articles of trade or value recognized on the market when placed there, whether the timber be suitable to be manufactured into boards or turned into railroad sills, telegraph poles, or the smaller products from standing timber, more particularly the hard woods, such as rims, spokes, handles, spools, bobbins, and shuttles, and that the proper construction of the contract required that all timber standing on the land which had a value as such if placed upon the market should have been estimated as it stood in the forest, and that the timber contemplated by the contract should not have been confined to such only as could be reduced to board measure and manufactured into lumber at a profit. The trial judge therefore overruled the master, and held that the complainant had failed by the testimony to show that there was any deficiency in the amount of merchantable standing timber, included under his definition of the terms, at the date of sale upon the lands under 100,000,000 feet, and dismissed the bill of complaint. Upon appeal from this decree below the case now comes before this court.

[1, 2] The single question for construction in the case is what is the meaning of "merchantable standing timber" as embraced in the covenant of warranty in the deed of conveyance. When the proper timber to be included in that definition is determined, the only question of fact is what amount of timber included in that definition has been shown to be upon the land. The court finds that as a general rule the word timber, unless modified or controlled by other expressions in the contract, means as a rule such trees as are fit to be used in buildings or similar construction; that is, trees of such a size as are fit to be used in the construction, either of dwellings or ships. Trees of a size too small to be used for these purposes are not strictly speaking considered as timber, although their products are utilizable for the construction of interior work in dwellings, or for the manufacture of tools and other appliances. The determination, however, of what is meant by merchantable standing timber in the present

contract is also to be taken in connection with the fact that the amount of this merchantable standing timber is under the terms of the contract to be ascertained in feet, and therefore it is a guide to the determination of what timber is meant if we can determine what measurement is meant by the word "feet" in this contract. It is admitted it does not mean cubic feet; so, also, it does not mean lineal feet, as that would include mere poles which may be of very small diameter, and not of a kind fitted for the purposes of construction. The parties themselves seem to have given a construction which evidences what is the meaning of the word "feet" in this contract. In the answer of the defendant Middleby, he sets out that the original contract of sale was made with D. A. Ritchie and B. E. Cogbill (afterwards officers and incorporators of the complainant), who had an estimate made with a view to the purchase of the property, and on June 1, 1906, entered into a contract with the defendant Middleby for the purchase of the lands and timber; that the contract so made by the defendant Middleby with Ritchie and Cogbill was taken over by the complainant the Broad River Lumber Company, which company was incorporated for the purpose of taking over the contract, and a copy of the contract is attached to the answer of the defendant Middleby as a part of his answer, and the defendant alleges that the estimate of the amount of timber on the land made for Ritchie and Cogbill was known to and relied upon by the complainant. This contract with Ritchie and Cogbill, which is annexed to the answer of the defendant Middleby, provides for a sale of the property (the lands to contain not less than 20,000 acres) for $150,000, to be partly represented by notes; that the first note should be paid when 5,000,000 feet of lumber should have been cut from the premises; and that the second note should become due when 5,000,000 feet additional should have been cut.

The contract also provides that the several sawmills on the premises should be operated by Middleby after June 4, 1906, for the benefit of the purchasers until they could take control, but that all lumber already sawed or sawed prior to 4th of June, 1906, should belong to Middleby. It thus appears that this preliminary contract contemplated the payment of the purchase price of $150,000 accordingly as so many feet of lumber should have been cut; that is to say "sawed" from the premises, which would show that the word "feet" as embraced in this contract meant feet as calculated upon timber that can be sawed or cut for purposes of lumber, and as estimated by what is commonly known as feet in board measure. The preponderance of the testimony also of the witnesses adduced, especially that of Dr. C. A. Schenck, an expert witness put up by the defendant Middleby, was to the effect that the word "feet," when applied in expressing the number of merchantable standing timber, meant such timber that would be measured in feet by a sawmill man. This from the testimony would mean board measurement. If the word "feet" as used in this contract be one of technical character, to establish the meaning of which the evidence of persons skilled in the vocabulary of the particular business is admissible, the testimony is that the word "feet"

as used in this contract would mean board feet, or timber that can be measured in board feet when sawed in lumber. This would appear to be exactly the same meaning as intended by the parties as expressed in writing by the contracts made at the time. The court holds, therefore, that the court below was right in overruling the master on the point that in the present contract the words "merchantable standing timber" embraced only timber that could be reduced to board measure and manufactured in lumber at a profit, but erred in extending the construction of those words in the contract to include any timber in excess of such timber as was capable of being measured in board feet when sawed or cut for the purposes of utilization. The exact amount of such timber does not appear to have been put in evidence by the complainant, and the testimony put in the evidence by the complainant appears to be deficient in not proving with sufficient exactitude the amount of timber that would be embraced in this definition as settled by this court, but there is in evidence as put in evidence by the defendant himself testimony to show that the quantity of timber upon the lands in question which would be embraced within this definition would be 78,826,676 feet which aggregate is arrived at by taking the 75,624,198 feet shown by Exhibit A in the transcript and adding thereto the 3,202,478 in cross-ties, making the total as above set forth.

[3] Inasmuch as this is the defendant's own testimony, it should be binding upon him as to the amount of timber within the definition fixed by this court, and, as the complainant failed to show exactly the amount within the definition, the court is of the opinion that it would be better at this stage of the cause to give a final decree based upon the evidence before it. This would leave a deficiency under the 100,000,-000 feet guaranteed of 21,173,324 feet, for which deficit, estimated at the rate of $2 per thousand, amounting to the sum of $42,346.64, the complainant is entitled to judgment against the defendant to be credited upon the unpaid notes secured by the mortgage. The credit to be made upon the notes as of their date, so as to reduce the principal of the notes when given by the amount credited.

The decree of the court below, therefore, must be modified so as to accord with this conclusion.