NEAL LUMBER AND MANUFACTURING COMPANY *et al.* v. O'NEAL, for use, etc.

No. 8933. NOVEMBER 17, 1932.

884

*J. T. Goree, E. C. Smith Jr.,* and *Dixie Drake,* for plaintiff in error.

*W. V. Custer & Son,* contra.

BELL, J.  This was a suit by B. M. O'Neal, for the use of J. R. Sealy, against Neal Lumber & Manufacturing Company and others, to enjoin the cutting and removal of timber situated upon land the legal title of which was in O'Neal and the equitable title in Sealy as the plaintiff's vendee.  The petition sought also to enjoin the commission of other alleged acts of trespass upon the land in question.  The court overruled a general demurrer to the petition, and granted an interlocutory injunction, and the defendants excepted. Neal Lumber & Manufacturing Company was the real party defendant, and no reference to other parties defendant is necessary.

The petition shows that the plaintiff holds the title to the land by mesne conveyances from Mathew Alday and Henrietta Alday, and that the defendant claims the title to the timber growing upon the land by grants from the same parties.  The petition sets forth a copy of a contract signed by Henrietta Alday, which in turn refers to a previous "lease and timber deed" signed by Mathew Alday. These instruments purport to convey the trees and timber upon the land in question for certain periods respectively, and are alleged to constitute the bases of the defendant's claim.  The petition contains the following additional allegations:  The defendant is claiming the right to cut and remove trees and timber to which it has no right under either of the Alday contracts, and is actually cutting and removing second-growth hickory to which it has no title, and is threatening to cut and remove "any and all trees now growing upon the land."  A private road has been made through the land by Sealy for his "convenience and enjoyment," and the defendant has "cut down trees across said roadway, blocking the same and preventing the use thereof, in violation of the terms of its said lease." The plaintiff's usee has already been damaged in the sum of $700, and irreparable loss and damage will be sustained by him unless an injunction should be granted.  The prayers are for process, and injunction, and for a judgment for the damage alleged to have been sustained.

The exhibit attached to the petition shows a contract made be-

tween Henrietta Alday and W. T. Neal, trustee, a predecessor in title of the defendant. The contract recited a consideration of $750, for which Henrietta Alday extended "to the 18th day of March, 1954, that certain lease and timber deed executed by Mathew Alday on to wit, March 18th, 1909, to the Southern Hardwood Manufacturing Co., . . said lease and timber deed describing and embracing" the land referred to in the plaintiff's petition, and "the said W. T. Neal, trustee, being the assignee" of Southern Hardwood Manufacturing Company. It appears that the "lease and timber deed" made by Mathew Alday originally covered a period of 25 years, and except for the extension agreement would expire on March 18, 1934. The instrument signed by Henrietta Alday also stipulated that for the same consideration she did "further grant, bargain, sell, and convey unto the said W. T. Neal, trustee, his successors and assigns, all of the trees and timber of every kind and description growing or being on the above-described lands, and grant and convey unto the said W. T. Neal, trustee, his successors and assigns, full license and privilege at any and all times, until March 18th, 1954, to cut and remove any and all trees and timber growing or being on the said lands; to enter upon and pass over said lands with men, teams, railroad, carts, wagons, or other vehicles, locomotive, skidders, or tractors, for the purpose of cutting, moving, or manufacturing the said trees and timber on any part thereof, or for the purpose of cutting, moving, or manufacturing trees and timber or wood products cut from other lands."

The petition shows that the plaintiff acquired the title to the land after the execution and record of each of the timber leases or deeds, and that the defendant is now the owner and holder of each of these instruments and of all rights therein conveyed. The petition does not set forth a copy of the lease executed by Mathew Alday, and discloses nothing as to its contents except what was stated in the instrument signed by Henrietta Alday; but the defendant in its answer set forth a copy of the former contract, from which it appears that in consideration of the sum of $4750 Mathew Alday, on December 1, 1909, did "grant, bargain, demise, sell, and lease" to Southern Hardwood Manufacturing Company, its successors and assigns, "all and singular the trees and timber, of whatever kind or character, standing or lying upon the ground," of 24 stated lots and fractional lots of land in Decatur County, Georgia, the

party of the second part "to have free use and enjoyment of all of said trees and timber on said land for and during a term of 25 years from the 18th day of March, 1909, with the unrestricted rights and privileges of going upon the lands for the purpose of taking and carrying off said trees and timber at any and all times during said term," except that certain "last-mentioned lots [were] not to be cut until ten years from date." The defendant denied that it was cutting or had sought to cut any of the timber not embraced in the Alday leases, but admitted that it claimed the right and intended to cut and remove not only trees which were useful as timber on the dates of the leases respectively, but also any and all trees which may have or will become timber by growth since the execution of these instruments, contending that it had the right to do so under a proper construction of the leases. At the hearing for injunction it was stipulated that the plaintiff's title was subject to such rights as were conveyed by the leases, and that "the sole issue for determination, . . so far as the facts are concerned, is the right of Neal Lumber & Manufacturing Company to the trees and timber claimed by it under said leases" which are now held and owned by this company. The defendant offered oral testimony as to the understanding of the parties, in support of its contention as to the meaning of the lease contracts.

■ The petition alleged that the defendant was cutting and removing trees and timber, including second-growth hickory, to which it had no title; also that the defendant had blocked a private road made upon the land by the plaintiff's usee in the exercise of his right of possession, and that before suit the usee had sustained damage in the sum of $700 by reason of these acts of trespass. It was averred that the plaintiff and the defendant claim under a common source of title, and that irreparable loss and damage would be sustained by the usee unless injunction should be issued. The petition prayed for injunction, and for a money judgment for the accrued damage. The defendant does not contend that the leases carried the right to cut and remove second-growth timber, nor is the complaint limited to acts of trespass in reference to the trees or timber. The plaintiff is not proceeding under the timber cutters' act (Civil Code of 1910, § 5504), but is seeking an injunction upon general equitable principles. *Huxford* v. *Southern Pine Co.*, 124 *Ga.* 181 (2) (52 S. E. 439) ; *Hart* v. *Lewis*, 126 *Ga.* 439 (55

S. E. 189); *Moore* v. *Daugherty,* 146 *Ga.* 176 (2) (91 S. E. 14); *Kirkland* v. *Odum,* 156 *Ga.* 131, 135 (118 S. E. 706). Considered as a suit for injunction only, the petition was not subject to general demurrer. *McRae* v. *Smith,* 164 *Ga.* 23 (5) (137 S. E. 390); *Broome* v. *Arlington Realty Co.,* 161 *Ga.* 823 (131 S. E. 896); Civil Code (1910), §§ 5490, 5493. Moreover, the allegations were sufficient to authorize a recovery of damages for the acts of trespass referred to; and this alone was a valid reason for overruling the general demurrer. *Gillis* v. *Hilton & Dodge Lumber Co.,* 113 *Ga.* 622 (38 S. E. 940). No point is made as to the right of the plaintiff to sue for the use of another, and as to that question we merely assume, without deciding, that this plaintiff was the proper person to bring the suit.

■ Mathew Alday conveyed the trees and timber for a period of 25 years from March 18, 1909, the subject-matter being described as "all and singular the trees and timber, of whatever kind or character, standing or lying upon the ground." On June 22, 1921, Henrietta Alday as a subsequent owner of the land extended the former lease for a period of 20 years, or until March 18, 1954. Not only this, but she granted and conveyed "all of the trees and timber of every kind and description growing or being" on the land, and granted "full license and privilege at any and all times until March 18, 1954, to cut and remove any and all trees and timber growing or being on said lands." In the instrument signed by Henrietta Alday, the former contract was referred to as a "lease and timber deed." The sole matter for determination is the construction of these instruments with respect to the property or property rights therein conveyed. The trees and timber are described in substantially the same language in each instrument; but the second contract was not only an extension agreement, but was a new conveyance of "all of the trees and timber of every kind and description growing or being" on the land, good for the period therein specified, namely about 33 years. The defendant does not contend that it had the right to cut and remove any trees or timber not in existence upon the land on the date of the lease executed by Henrietta Alday, but it does contend that the lease conveyed all of the trees which then stood upon the land and which would grow and become timber during the life of the contract, regardless of whether they were useful as timber at the execution of the instrument. It

is unnecessary to make further reference to the "lease and timber deed" signed by Mathew Alday, except to note that it covered a period of 25 years, and that the two leases together were intended to run for more than 40 years.

What is meant by the language "all of the trees and timber of every kind and description growing or being" upon the land, as used in the lease executed by Henrietta Alday? We may simplify the question to some extent by considering this language as if the phrase "and timber" had been omitted. What then was intended by the words "all of the trees"? The defendant's answer says in effect that a plant may be called a tree even before it has attained such growth as to be useful as timber; and for the purposes of this case we may and do assume, without deciding, that this is a correct distinction. A tree has been defined to be "a woody plant, the branches of which spring from and are supported upon a trunk or body. It may be young or old, great or small." Clay v. Postal Telegraph Co., 70 Miss. 406, 411 (11 So. 658). The following is a definition found in Webster's New International Dictionary: "A woody perennial plant having a single main axis or stem (trunk), commonly exceeding 10 feet in height and usually devoid of branches below, but bearing a head of branches and foliage or a crown of leaves at the summit. There is no exact line of demarcation between trees and shrubs, and many plants are capable of assuming either habit." But a word may have one meaning in a dictionary and an entirely different meaning in a contract, and its meaning in different contracts will vary according to the intention of the parties. In the construction of every contract the main object is to arrive at the intention of the parties, and to this end the words must be examined in the light of all the attendant circumstances. Words so employed may not always be considered in the abstract, but the situation of the parties may and often must be looked to in arriving at a proper interpretation of the language used. In the present case it appears that on the one side was an owner of trees which were being offered for sale, and on the other was a person who desired to purchase the same for use as timber. This is apparent from the contract itself, as well as from the facts and circumstances proved by the evidence.

The occupation of the vendee and the obvious purpose for which the trees were desired are matters which must be taken into con-

sideration. *Pennington* v. *Avera,* 124 *Ga.* 147 (52 S. E. 324). If the purchaser had been engaged in some business in pursuance of which he wanted the trees for transplanting, as for growth and use as shade-trees, or for the purpose of reforestation, or for any other purpose than use as timber, the word "trees" might have a different meaning from that which should be ascribed to it in the contract under consideration. These trees were sold, not simply to be removed, but to be "cut" and removed, and the use for which they were desired necessarily enters as a part of the description. The long duration of the grant made by Mrs. Alday may tend in some degree to indicate an indication to convey such trees as could be used as timber at any time during the life of the contract; but under the terms of the lease the right to cut and remove the trees immediately was not restricted, and the vendee could have entered at once and commenced his operations. If he had done so, is there any doubt that he would have been confined to the removal of such trees as were then fit for use as timber? In demanding and receiving an easement of immediate entry, the grantee manifested a purpose to purchase the trees as timber. It is therefore clear that the lease was intended by the parties to operate only upon such trees as would be suitable for this purpose at the time the lease was executed. "One party was contracting to sell and the other to buy trees growing and being on the land, which were to be removed therefrom. There is nothing to indicate that the parties intended to establish a nursery for cultivation of sprouts and saplings for removal after they had developed by growth into trees of such size as to be convertible into lumber suitable for building and allied purposes." *Vandiver* v. *Byrd-Matthews Lumber Co.,* 146 *Ga.* 113 (90 S. E. 960). We conclude that the word "trees" as employed in the contract was intended to mean only such trees as could be used immediately as timber for manufacturing and construction purposes; and this interpretation is materially strengthened when the word "timber" is also considered as a part of the description. See, in this connection, *Allison* v. *Wall,* 121 *Ga.* 822 (6) (49 S. E. 831) ; *Roberts* v. *Gress,* 134 *Ga.* 271 (67 S. E. 802) ; *Gaskins* v. *Futch,* 169 *Ga.* 464 (150 S. E. 557).

But the lease under consideration not only conveyed "all of the trees and timber," but further granted and conveyed "full license and privilege at any and all times, until March 18, 1954, to cut

and remove any and all trees and timber growing or being on the said lands." The defendant lays much stress upon the provision last quoted, contending that it conveyed the right to cut and remove not only such trees as were suitable for timber on the date of the instrument, but also such other trees as were then in existence and would become suitable for such use at any time while the contract was in force. The first part of the granting clause conveyed an estate in the trees and timber, defeasible upon the failure to remove the same within the time specified (*Jones* v. *Graham*, 141 *Ga.* 60, 80 S. E. 7), while the provision as to "license and privilege" was intended merely to assure such license and privilege for the period stated. This latter provision did not purport to add to the subject-matter of the conveyance, and can not be construed as enlarging the description of the trees and timber covered thereby. Upon a consideration of the entire contract, it is not apparent that the parties intended to convey an estate in some of the trees and at the same time to grant a mere license and privilege to cut and remove others. See *Massee & Felton Lumber Co.* v. *Macon Cooperage Co.*, 44 *Ga. App.* 590 (162 S. E. 396), and cit. It appeared from the evidence of experts who testified in this case that the approximate age of a tree can be determined at any time, and that its size and suitability for timber at a given time in the past may be estimated with reasonable accuracy. Time was not all that the purchaser got by the long duration of the lease. The additional growth of the timber enured to his benefit and was a material inducement.

Accordingly, it is not unreasonable to say that the lease would not take in other trees as time passed. The oral testimony as to the intention of the parties to the lease contract could not have the effect of varying the plain and unambiguous terms of the instrument —certainly not as against the plaintiff, who acquired the land subject only to such rights as were conveyed thereby, without regard to any verbal agreement between the parties. *Burke* v. *Anderson*, 40 *Ga.* 535, 539; *Boardman* v. *Taylor*, 66 *Ga.* 638 (2). We are aware that our construction of the lease in question may not be in accord with the views expressed by some other courts in like cases, but it is in harmony with previous adjudications by this court and with the weight of authority. See 28 Am. & Eng. Enc. Law, 542 (5); 38 C. J. 161, § 37 (b), and cit. The court did not err in granting an interlocutory injunction against the cutting and re-

moval of "any trees or timber growing upon said land that was not of merchantable size on the 22nd day of June, 1921, the date of the lease from Henrietta Alday to W. T. Neal, trustee."

*Judgment affirmed. All the Justices concur.*
ATKINSON, J., concurs in the result.