15309

HOLLY HILL LUMBER COMPANY, INC., v. GROOMS *ET AL.*

(16 S. E. (2d), 816)

*Mr. J. Frank Eatmon,* of Kingstree, and *Mr. John I. Cosgrove,* of Charleston, for appellants,

*Mr. Marion F. Winter,* of Moncks Corner, and *Mr. T. B. Bryant, Jr.,* of Orangeburg, for respondent,

October 15, 1941.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

The petition for a rehearing in this case is refused. However, the prevailing opinion heretofore filed herein is ordered to be withdrawn and there is substituted therefor the following opinion:

This is an action in *quare clausum fregit* with prayer for injunction against defendants to restrain them from cutting trees and timber on lands in Berkeley County over which the plaintiff claims possession under a timber deed for the timber on said lands.

The complaint sets out the facts upon which plaintiff relies, a resume of which is set out thusly: The corporate capacity of the plaintiff, the location of the land in Berkeley County, South Carolina, and the residence of the defendant in the same county; the execution by Hiram Rudd of his deed to William O'Brien, George A. Lammers and Albert J. Lammers to certain timber rights, ways, privileges and easements in lands in said county, thus described: "All that certain piece or parcel or tract of land known originally as Jacob E. Wiggins tract situate in St. James Goose Creek Township, in the County of Berkeley, and State of South Carolina, containing seven hundred and eighty-eight (788) acres, more or less, and bounded and described as follows, to wit: All that tract of land conveyed to Hiram Rudd by Jacob E. Wiggins by deed dated Nov. 27, 1880, and recorded in R. M. C. Office, Charleston County in Book L, page 319. This tract now conveyed being shown on a copy of original plat made by S. W. Joyner in 1847, copied by J. H. Beatty, April 20, 1900, which is to be recorded contemporaneously with this conveyance. Bounded North by lands of Estate of Wm. Whaley, East by other lands of

Grantor, South by Risher, Way & Thrower lands, and West running into Four-Holes Swamp lands owned by D. E. Thrower."

That these timber rights and easements were by sundry successive conveyances, all of which were recorded, set over, assigned and sold to plaintiff; that defendants are cutting, and threaten to continue to cut, timber on this property of plaintiff. They ask for an accounting for the logs and timber thus alleged to have been cut by defendants, and for damages in the sum of three thousand dollars, for an injunction *pendente lite,* and for permanent injunction.

The defendants set up for answer:

First, a general denial.

Second, admit the allegations of the first, second, and third paragraphs of the complaint. Admit, as is alleged in paragraph "sixth," that F. O. Grooms purchased the lands adjoining the tract of land described in the complaint on the North, and that he has since conveyed it to his co-defendant, Beanie Grooms, and that she has since acquired the lands described in paragraph "third," but denies the remaining allegations of that paragraph.

For a second and further defense:

That she (Beanie Grooms) is the owner of the following described tract of land, to wit: "All that certain piece, parcel or tract of land, situate, lying, and being in the County of Berkeley and State of South Carolina, measuring and containing nine hundred (900) acres, more or less, butting and bounding as follows, to wit: On the North by lands now of Cooper River Timber Company; on the East by the estate of X. O. Rudd, on the South by Beanie Grooms; and on the West by Wm. Jeffers and estate of Mose Wilson. Being the same tract of land that the said F. O. Grooms purchased from estate of William Whaley." Which adjoins the land upon which plaintiff claims title to the timber as set forth and described in the complaint in this action, but the lands upon which this defendant has cut and removed timber, if any she has, belongs to and is a part of the tract

of land herein described, and is in no wise a part of, affected or covered by the timber deed and contract referred to in plaintiff's complaint.

"2. That neither the said plaintiff nor any person through or by it claiming has any right, title, interest or estate of whatsoever kind or nature in or to any part or parcel of the real estate herein described and/or the timber or trees thereon standing or growing."

Third: That she and her predecessors in grant have been in sole and exclusive possession of the land above described, and the timber and trees thereon, under claim of title adversely and continuously against the whole world for more than ten years last preceding the commencement of this action.

Fourth: This above defense is repeated, and defendant claims to have been in sole and exclusive possession of this land for more than twenty years last preceding the commencement of this action.

Fifth: That in June, 1938, defendant began cutting and moving timber from the disputed land; that plaintiff acquiesced in, consented and encouraged defendant to cut and remove timber from disputed area, and purchased and paid. for several loads of the logs delivered to it, with full knowledge of the place from which the logs came, and plaintiff is estopped by its acts and conduct in asserting any rights. adverse to defendant in the remaining timber and trees: taken from the area where the timber was cut.

Ninth: That defendant is informed, and believes, that the plaintiff abandoned the said tract of land and the timber and trees remaining thereon.

Tenth: That plaintiff trespassed upon and cut from the land described in the complaint, certain timber and trees which were not intended to be and were not included in the timber deed or contract under which plaintiff claims. That the value of the timber and trees thus cut by plaintiff, wilfully, wantonly and recklessly, is fifteen thousand dollars,

and defendant has, by these acts of plaintiff, sustained damage in that amount, for which she asks judgment.

The case was heard by Judge Featherstone and a jury. At the conclusion of the testimony, the plaintiff moved for a directed verdict against all of the defendants on all of the issues. After argument, His Honor directed a verdict for the defendants, O. J. Dangerfield, Charles A. Jones and Anna Belle Jones, and against the defendants, F. O. Grooms and Beanie Grooms, on all of the issues involved, except the value of the timber cut by defendants. This he referred to the jury, who found it to be $948.00. Motion for a new trial was refused. The defendants F. O. Grooms and Beanie Grooms appealed.

The grounds of appeal are stated in nineteen exceptions. In our judgment these make the following questions for our consideration and determination:

1. Was the trial Judge correct in his construction of the timber deed?

2. Was the Court correct in its ruling that defendant could not prove the original plat of Hiram Dudd tract?

3. Did the Court err in directing a verdict against the defendants on the issue of abandonment instead of submitting that issue to the jury?

4. Did the Court err in directing a verdict against the defendants on the issue of estoppel instead of submitting that issue to the jury?

5. Were the defendants entitled to have the issue of their counter-claim submitted to the jury?

In our judgment, the cardinal issue in this case turns upon the proper construction of the timber deed.

His Honor said: "As I understand, the defendants are contending, and have set up in the counter-claim, that there were kinds of timber set up in here not embraced in this contract. It is an entirely new question to me, but my best judgment is that the defendants are right in their contention; and I am going to hold that it was all timber that was

on the land, at the time, and not any timber that might be grown there in the future.

"Mr. Bryant: Your Honor, I would like to get your ruling as to what size timber in 1903.

"The Court: I think they had the right to cut anything on there at that time. I put in my ruling, not to embrace anything in the future. Anything that was on there at the time, but nothing in the future.

"Mr. Eatmon: Any sprouts or brushes or anything else?

"The Court: Yes, sir. You can't convey anything not in existence. It must be in existence at the time. I think the language is very broad, and no timber of any size is excluded at all."

The timber deed in question was made by Hiram Rudd in 1903. It conveys: " * * * all the timber of every kind and description, both standing and fallen, * * *."

Had his Honor confined his ruling to say: "I am going to hold that it was all timber that was on the land, at the time, and not anything that might be grown there in the future," we think the ruling would have been correct, but when he added that it included "sprouts and brushes" and "no timber of any kind is excluded at all," we think he went too far. This conveyance is not one of the fee in the land. It is of an easement to cut the "timber." "Sprouts and brushes" are not timber. The relevancy of this distinction will be seen later.

Black's Law Dictionary, Third Edition, page 1730, has this to say: "Timber. Wood felled for building or other such like use."

The Circuit Court of Appeals of the Fourth Circuit, in the case of *Broad River Lumber Company v. Middleby et al.,* 194 F., 817, 819, said: " * * * The Court finds that as a general rule the word timber, unless modified or controlled by other expressions in the contract means as a rule such trees as are fit to be used in buildings or similar construction; that is, trees of such a size as are fit to be used in the construction, either of dwellings or

ships. Trees of a size too small to be used for these purposes are not strictly speaking considered as timber * * *."

Certainly "sprouts" and "brushes" could not be considered timber as used in a timber deed.

In the case of *Furman v. A. C. Tuxbury Land & Timber Co.,* 112 S. C., 71, 80, 81; 99 S. E., 111, 114, that clear thinking jurist, Associate Justice Hydrick, speaking for the Court, said: "The Court instructed the jury that, under the terms of the deed, defendant had no estate in any of the pine timber on the land under ten inches in size (stump diameter), at the time of cutting. Defendant's contention at the trial was that, if any pine timber under the size specified was destroyed, it would not be liable therefor, if such timber would have attained the specified size by the 20th of April, 1930, the end of the term in which it had the right to cut and remove it. That construction of the grant would have given defendant the right to destroy all pine timber on the land which would have attained the specified size by the end of the term, even though defendant had no intention to remove and exercise its right to cut and remove it at a later date, during the term, and even though such right may have been lost or determined before the end of the term. Clearly, that was not what the parties intended, and that was not the intention expressed and implied in their contract. When plaintiffs conveyed all the pine timber of the size specified, at the time of cutting, they provided a certain and definite standard and method of ascertaining what timber was sold and what was reserved, and they were entitled to the protection of that provision for certainty at all time during the life of the contract. Defendant's construction would have made uncertain and thrown open to speculation a matter about which the plaintiffs had stipulated for certainty; for how could a jury do more than speculate as to the size to which a sapling pine would grow in any given number of years? The rapidity of its growth would depend upon the fertility and character of the soil, the density of surrounding growth, future atmospheric conditions, such

as heat and cold, rain and droughts, and other contingencies which it would be impossible to forecast, prove, or disprove. Under this provision of the grant, defendant had no right to cut or destroy any pine timber under the specified size, at the time of cutting."

We think this citation answers the ruling in our case now under review that the timber deed included sprouts and brushes and anything on the land then.

It may be remarked that the deed throughout speaks only of timber. It would seem to be clear that the parties to the contract negotiated and contracted only in relation to the timber on the land. The deed conveys *all timber* standing and fallen, *on* the land described. It estimated that "All the actual timber now on that entire tract is 388 acres."

The right granted to *cut and use small timber and brush* was to be used in building railroads, etc. The provision of the *habendum* clause granted "the aforesaid timber" on the named tract. All of these things point with accuracy to the conclusion that the parties contracted only in relation to the timber of the description hereinabove set forth as was on the land when the deed was executed in 1903.

In the case of *Crawford v. Atlantic Coast Lumber Company,* 79 S. C., 166; 60 S. E., 445, 446, this Court said in determining the intent of the parties to a timber contract: "It is elementary that where it is possible, without violating the legal rules of construction *or the clear intention of the parties,* [italics added] effect should be given to every part of an instrument. * * *"

Governed by this rule, which is a canon of the law, we have scanned the deed in evidence in this case and have reached the conclusion that it conveyed only the *timber* on the land at the time of the execution of the deed.

The following cases cited in syllabi to the opinion of the Supreme Court of Georgia in the case of *McRae v. Smith,* 164 Ga., 23; 137 S. E., 390, are not binding on this Court, but they are apt and persuasive:

"All trees suitable for manufacture at time of grant except sprouts and saplings were included in lease conveying 'all sweet red gum timber."

"Lease conveying 'all sweet and red gum timber' includes all trees standing on land suitable at time of grant for use in manufacture of lumber or building material, and does not embrace sprouts and saplings.

"Lease conveying all sweet and red gum timber did not include timber which by subsequent growth became suitable for manufacture.

"Conveyance of all sweet red gum timber included only trees which were suitable for manufacture of lumber or building materials at time of conveyance, and did not include trees which by subsequent growth became suitable for such purposes."

The Supreme Court of Georgia, in the case of *Vandiver v. Byrd-Matthews Lumber Company et al.,* 146 Ga., 113; 90 S. E., 960, said this: " * * * The subject-matter of the grant is timber, and includes all trees standing on the land that are suitable, at the time of the grant, for use in the manufacture of lumber or material for building, manufacturing, and kindred purposes, and does not embrace sprouts and small saplings."

In the case of *Wilson Lumber Company v. D. W. Alderman & Sons Co.,* 80 S. C., 106; 61 S. E., 217, 218; 128 Am. St. Rep., 865, the following is found: "The Court (Judge Prince presiding) in a very clear and able decree decided that the deed to Wilson conveyed to him all the pine trees and timber of every description suitable for milling purposes at the time of its execution in 1893, * * *."

In the case of *Neal Lumber & Manufacturing Co. et al. v. O'Neal,* 175 Ga., 883; 166 S. E., 647, the Supreme Court of Georgia held that under a deed which conveyed "all of the trees and timber of every kind and description growing or being" on the land, " * * * the purchaser acquired the right to cut and remove only such trees as were suitable for timber on the date of the instrument, and was not entitled to

cut and remove other trees which did not become suitable for such use until some time later."

It seems needless to cite or quote other authorities under this head.

Certain of appellants' exceptions charge error to the presiding judge in that he refused to grant appellants' motion for new trial made on the ground that he had erred in directing a verdict for the plaintiff on the issue and defense of abandonment, and the issue of estoppel, there being evidence upon these issues which should have been submitted to the jury.

We may consider these exceptions together, since the evidence relates to and is pertinent to both the issues of abandonment of the easement by plaintiff, and of estoppel.

Let it be borne in mind that we are not to be understood to be trying the issue whether the appellants have, by their testimony, as shown by the record, sustained their pleas of abandonment and of estoppel. Our sole inquiry is whether they have offered evidence which entitled them to go to the jury on these issues; and if the direction of a verdict for plaintiff denied defendants a legal right.

We shall not pause to cite and quote authorities in support of the postulate that the jury is the sole judge of the force and effect of the evidence, and if there is any competent and relevant evidence it must be submitted to them. There will be no dispute of this well-established principle.

Black's Law Dictionary, Third Edition, page 5, defines "abandonment" to be: "The relinquishment of a right. It implies some act of relinquishment done by the owner without regard to any future possession by himself, or by any other person, but with an intention to abandon."

In a clear and well-considered opinion in the case of *Witt et al. v. Poole,* 182 S. C., 110; 188 S. E., 496, 498, Mr. Justice Fishburne sets forth the law defining "abandonment." We cite: "That an easement may be lost

by abandonment is a principle too well established to admit of argument. The primary elements of abandonment are the intention to abandon and the external act by which the intention is carried into effect. The intention to abandon is considered the first and paramount inquiry. It is generally held that abandonment may arise from a single act or from a series of acts, and that time is not an essential element of abandonment, and is of no importance except as indicative of intention." Citing 1 Am. Jur., Abandonment, Section 8; 1 C. J. S., Abandonment, § 3a.

Does the record disclose that there was produced evidence, relevant and competent, to go to the jury on the subject of abandonment of its easement by the plaintiff?

It appears that plaintiff cut timber from this Hiram Rudd land in 1937 and 1938, and discontinued operations in 1938; that Mr. Grooms, defendant, sold to plaintiff logs from time to time; that the plaintiff bought and paid for logs cut from this land after it had moved its mules, machinery, teams, etc., from the land and stopped cutting. The contract provided only for 358 acres, and it could well be that plaintiff had cut the desirable timber from these acres.

The timber contract under which plaintiff claims was returned for taxation in 1937, but was not returned for taxation in 1938, in which year it discontinued its operations on the land. Plaintiff moved its equipment, teams, etc., on the land in the summer of 1937, and cut continuously until March, 1938. By this time the plaintiff and its predecessor in grant had cut over approximately 348 acres of the land included in its contract which was estimated to be 358 acres. It is argued that the jury might well have inferred that plaintiff had cut the timber from all the land it could profitably cut, and intentionally abandoned the remainder.

At the time this alleged trespass was committed, the plaintiff was not in actual possession of the premises, but had discontinued operations there and had withdrawn its teams, equipment, etc., therefrom.

It is true that there is evidence by the plaintiff in contradiction and explanation of that of the appellant relating to abandonment and estoppel. Mr. Miller, the president of the Holly Hill Lumber Company, says categorically that they had not abandoned the property and had no intention of abandoning the contract, and he says further that as soon as he learned that Mr. Grooms was cutting timber on the land covered by the plaintiff's timber deed, he took legal action to stop him. However, the testimony above referred to, made an issue, which in our judgment, should have been submitted to the jury.

Appellant raises the issue of estoppel by the acts of the plaintiff and its agents, and argues that when the Court directed a verdict in favor of plaintiff, it ignored this issue and the evidence in support of it, which should have been submitted to the jury.

In the case of *Empire Buggy Company v. Moss*, 154 S. C., 424; 151 S. E., 788, this Court said: "In order that waiver may work an estoppel, it must be an act or acts evincing an intentional relinquishment of a known legal right, * * *." And in the case of *Farmers' & Merchants' Bank v. People's First National Bank of Charleston*, 161 S. C., 286; 159 S. E., 617, 619, this Court said: "Waiver has been frequently defined as the voluntary relinquishment of a known right and may be express or implied. * * *"

There are, in the evidence above cited in considering the question of abandonment, facts related which are pertinent to the question of estoppel which need not be repeated here, but which are relied on in support of the issue of estoppel. Since this case must go back for a new trial, we need not discuss if the testimony made an issue of estoppel. It is very doubtful.

Mr. H. A. Moore testified on direct examination that his occupation is forest engineering; that in February, 1939, he made an estimate of the timber and trees that had been cut from the Hiram Rudd tract of land within three years

prior to his estimate; that practically all of the upland area and certain branch flats on the tract had been cut over, but he did not examine the main swamp part; that he made a growth study of the trees that had been cut and found that approximately 10-20 M feet in old field pine had been cut that was not on the property in 1903, and that 685 poles also had been cut that were about the same age as the old field pine; that the market value of the poles was 75¢ each; that on the Hiram Rudd tract, approximately 209 acres had been cut over within three or four years prior to his estimate and that approximately 139 acres had been cut over sometime prior to the last cutting—making a total of 348 acres of woodland that had been cut over.

H. O. Rudd testified that Hiram Rudd, deceased, was his grandfather, and that Beanie Grooms is his aunt; that he had been familiar with the Hiram Rudd tract of land practically all his life; that he accompanied H. A. Moore, forest engineer, when he made an estimate of timber and trees that had been cut from the land in 1937-38; that the poles and old field pine timber and trees referred to by Mr. Moore were not on the land in 1903, the date of the execution of the timber contract under which the plaintiff claims, as the land from which the same were cut was then under cultivation.

John O. Edwards testified that he is auditor for Berkeley County; that according to the records in his office the plaintiff returned a timber deed for taxation in 1937; that the records did not indicate a like return for the year 1938.

F. O. Grooms, recalled, testified that following the discontinuance of operations by plaintiff on the Hiram Rudd tract in 1938, he claimed all the timber and trees remaining on the land because he considered that plaintiff had abandoned it; that some three or four weeks after he commenced cutting logs on this tract in May or June, 1938, one Mr. Murray, agent or employee of plaintiff, also commenced cutting trees on another area of this tract and following a conversation he (Grooms) had with plaintiff's logging su-

perintendent, Henry Behling, Murray discontinued operations on his first day there and did not return.

Wesley Smith testified that he had been familiar with the Hiram Rudd tract of land since 1910; that in 1910, the entire area of the tract west of the Gaillard road was under cultivation; that he had been over that portion subsequent to June, 1938, and observed that trees had been cut therefrom on lands that were under cultivation in the year 1910.

Much of this evidence relates also to the plea of estoppel of defendants, which was put out of the case by the order granting the motion for verdict for plaintiff.

We think the Court should have submitted to the jury the issue of defendants' counterclaim. It is plain that the title in fee of the land was in Mrs. Beanie Grooms. Even if the pleas of abandonment and estoppel be held against her contention, we still have to consider that there was evidence that the plaintiff had cut from the land trees that were not on it when the deed was executed in 1903. The trial Judge held, in construing the timber deed, that it did not convey anything that was not on the land when the deed was executed in 1903. We hold in that respect he was correct. Now there is evidence that plaintiff cut pine trees and poles from a part of the Hiram Rudd land included in plaintiff's timber deed which was in cultivation in 1910 and which trees were not on the land in 1903, when the deed was executed. If they were not on the land in 1903, they must have grown there between that date and 1938.

We think the Court should have submitted this issue of counterclaim to the jury.

When F. O. Grooms was on the stand, being recalled, he was asked:

"Q. You now claim all the timber? and he answered: A. Yes, sir, you all had left it.

"The Court: Is that the only reason you claim it, because they left it? Mr. Grooms: Yes, sir, only had 358 acres; they had cut that."

In connection with that matter, it must be borne in mind that Mrs. Beanie Grooms held the title in fee to this land, and was entitled to everything on the land not covered by the timber deed.

The erroneous construction of the deed by the Court that the deed conveyed the sprouts and brush on the land is of consequence here, in the light of the evidence that the pine logs and pine poles which it is alleged plaintiff cut were not on the land in 1903, when the deed was executed. It is easily inferable that they grew up between 1903 and 1937-38, when they were cut; and if they did, the plaintiff had no right under its deed to cut them.

Appellants charge error to the trial Judge because he refused to permit them to introduce any evidence tending to dispute the title of plaintiff to timber on the area cut by defendants, upon the ground that the heir was estopped to dispute the act of the ancestor, and in holding that the defendant, Beanie Grooms, had acquired her title to the property by descent; the error being that Beanie Grooms did not claim by descent, but by purchase.

For the proper understanding and determination of this issue, it is necessary to refer to the contents of the timber deed made by Hiram Rudd to William O'Brien, George A. Lammers and Albert J. Lammers, in 1903, which has, by successive conveyances, come now to plaintiff. This deed conveyed: " * * * all the timber of every kind and description, both standing and fallen, on all that certain piece, or parcel or tract of land. * * * conveyed to Hiram Rudd by Jacob E. Wiggins by deed dated November 27, 1880, and recorded in the R. M. C. Office for Charleston County in Book L, at page 319. This tract now conveyed being shown on a copy of original plat made by S. W. Joyner in 1847, copies by J. H. Beatty, April 20, 1900, which is to be recorded contemporaneously with this conveyance. Bounded North by lands of the estate of Wm. Whaley; East by other lands of grantor, South by Richer, Way and Thrower

lands; and West running into Four-Hole Swamp lands owned by D. E. Thrower."

It will be observed that the grantor states in his deed that the plat attached to his deed is the copy of the original plat made by S. W. Joyner, and that it is to be recorded along with the deed. It is clear that he intended to guarantee the correctness of this copy.

In the trial of this case the defendants offered to introduce in evidence the original plat of S. W. Joyner, but were not permitted to do so. His Honor said the parties claim from a common source, and that, since Mrs. Beanie Grooms is the daughter of Hiram Rudd, she would be bound by her ancestor. The general rule is to that effect. Mrs. Grooms, who was not claiming by descent, but by purchase, was seeking to prove that the copy of the plat was not a correct copy.

One of the fundamental issues in this case is involved in the question whether plaintiff cut timber on land not included in its deed. It had run a line along with the surface of the earth to show where its boundary line is. Defendants offered, by the old Joyner plat to which Hiram Rudd apparently invited reference, to show that plaintiff's claim of the line was incorrect.

"As a general rule, when maps, plats, or field notes are referred to in a grant or conveyance they are to be regarded as incorporated into the instrument and are usually held to furnish the true description of the boundaries of the land * * *." 11 C. J. S., Boundaries, p. 569, § 24.

If the deed had not had attached thereto a purported copy of the Joyner plat, then the foregoing citation of authority would have been applicable. Not only was this copy plat attached, but it was directed that it be recorded contemporaneously with the deed, and Hiram Rudd and his successors in title were therefore bound thereby.

We forbear to prolong this already too long opinion. These timber contract cases bristle with narrow questions, and as the able and learned Judge who tried this case said

it was new matter to him, it is not to be wondered at that some errors should occur in a hotly contested and prolonged case in which able counsel contested every issue.

We have pointed out errors which we think require that a new trial be had.

MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE concur.

MR. ASSOCIATE JUSTICE STUKES (dissenting in part):

The dissenting opinion filed on August 15, 1941, with the original majority opinion, is amended, and the following opinion is substituted therefor:

I cannot agree with the construction by the Chief Justice of the timber deed involved in this action, for I cannot escape the conclusion that it was the intention of the parties to the deed that all was conveyed which should come within the description, "timber," at the time of cutting and removal.

The situation resulting from the proposed construction is, I think, an impossible one. The evidence taken in the trial of this case establishes the impossibility of now determining with even substantial accuracy what was "timber" on the property in 1903. I am not unmindful that this Court said in its decision in 1908 of the case of *Wilson Lumber Co. v. D. W. Alderman & Sons Co.,* 80 S. C., 106; 61 S. E., 217, 218; 128 Am. St. Rep., 865, that it would be then difficult to determine what trees were suitable for milling in 1893, "but such inconvenience and difficulty is no ground for disregarding the express terms of the deed, which the Court must construe as the parties have made it." The Court had recently before held in *Crawford v. Atlantic Coast Lumber Company,* 79 S. C., 166; 60 S. E., 445, 447, that because a construction would lead to inconvenience cannot avail as an argument, and said: "The parties saw fit to make their contract, and they cannot now be heard to complain that it is not a proper one."

These two decisions seem to closer touch the present problem than any others in our reports. Neither, I think, is controlling of this case for they are distinguishable from it. In the last mentioned, the *Crawford case,* the conveyance

was of the trees "measuring nine inches in diameter, * * * now being on" the land. These words tied the description of the timber conveyed to the present, or time of conveyance, and are not found in the deed now before us. The time provided for cutting and removal, if any was specified, does not appear. In *Wilson Lumber Company v. D. W. Alderman & Sons Co.* the purchase was of the "timber suitable for milling purposes on" the tract of land, without specifying the time for removal.

Here we have the broad description, "all the timber of every kind and description, both standing and fallen, on" the land, and the following: "That the grantees, their heirs or assigns, shall have, and the same is hereby granted to them, the period of forty (40) years, beginning from the date hereof, in which to cut and remove the said timber from the said land, and that in case the said timber is not cut and removed before the expiration of said period, that the said grantees, their heirs and assigns, shall have such additional time therefor as he may desire, but in the last mentioned event, the said grantees, their heirs or assigns, shall, during the extended period, pay interest on the original purchase price above mentioned, year by year, in advance, at the rate of Six (6%) per cent per annum."

I am also mindful that the Court has said that usually where it is the intention of the parties that all timber which during the period for removal attains the specified dimensions (here comes within the meaning of the word "timber") shall be conveyed, such phrases as "at the time of cutting" or "at the time of severance" are used; but this statement was made in the opinion in *Crawford v. Atlantic Coast Lumber Company, supra,* where the conveyance was, as pointed out above, expressly of trees of certain dimensions then being on the land, and there was no forty-year period of removal specified; furthermore, the Court did not undertake to lay down a requirement of the inclusion of one of the quoted phrases or its equivalent. I take it that when

there is such inclusion, there is no doubt. Here, where there is no such phrase, the construction is more difficult.

Moreover, there has been no other holding and therefore no holding by this Court of which I know that the indicated words or their equivalent must be used in a deed in order to effectuate the otherwise indicated intention. The problem of this Court is to ascertain from the deed and its terms and provisions the intention of the parties and apply that intention to the decision of this case. Authority need not be cited that construction is the ascertainment of the intention. *Crawford v. Atlantic Coast Lumber Company, supra.*

The deed in the last-mentioned case, as has been pointed out, contained a definite description by diameter dimension of the timber conveyed while in the deed before us there is none. The Court cited for its decision there the case of *Warren v. Short,* 1896, 199 N. C., 39; 25 S. E., 704. Reference to that case also reveals a deed which conveyed the timber "12 or more inches in diameter at the stump, growing on" the tract of land.

Reference has been made to the practical impossibility in this case of now ascertaining what was standing or fallen timber on the premises in 1903, the time of the making of the deed, and to the testimony thereupon. A forest engineer (a profession which I venture to say was unheard of by the parties to the deed in 1903) testified for the defendants that in 1939, he made an examination of the premises and a growth study of the trees that had been cut and that approximately ten to twenty thousand feet and six hundred and eighty-five poles had been removed that were not on the property in 1903, but on cross examination he said that no rings showed in a pine tree during the first three years of its growth and that he could not swear upon the subject and had, in fact, made a report of his investigation which indicated that the timber to which he referred was at the time of the deed "in the seedling stage." On the other hand, R. O. Rudd, thirty-nine years old, testified that some of the trees were cut from land which was planted in 1910,

and was what is known as "old field" pine; and another witness for the defendants testified to the same effect.

I do not think that it can be reasonably said that the parties to the deed contemplated that there would have to be an expert (but inconclusive) inquiry at the time of the cutting and removal of the timber at any time within the period of forty years which they specified, in order to ascertain even approximately what the purchasers were authorized under the deed to cut and remove. If that was not their intention then such was, as I have suggested, that the purchasers should cut and remove such as was "timber" at the time of cutting and removal. Why else would so long a period as forty years be provided? There is nothing to show that the transaction was oppressive upon the landowner at the time the deed was made. It was estimated in the deed that the timbered acreage was three hundred and fifty-eight and the stated consideration was one thousand dollars, the value of which would be multiplied if interest were compounded thereon for the period provided in the deed. The growth of the fund constituting the consideration would be at least comparable to the growth of the timber.

The uncertain opinion of the experts who testified upon the trial of this case was founded upon his examination and study of the stumps of trees which had been cut, while to enforce the views of the appellants would require the ascertainment as to each tree before cutting that it was "timber" in 1903. Consideration of the problem is convincing that it is impracticable of solution and demonstrates that such was not within the contemplation of the parties to the deed, nor intended by them. The language of the Supreme Court of Appeals of Virginia in *Craddock Mfg. Co. v. Faison,* 138 Va., 665, 123 S. E., 535, 537, 39 A. L. R., 1309, is impressive. The Court was discussing the contention that the diameter measurement of standing timber sold must be taken inside the bark, and said: "It is also erroneous because impracticable. To measure a standing tree from 'inside bark to inside bark' would necessitate either removing

the bark at the specific height, and thus take the risk of being mulcted in damages for killing or injuring the tree, or else by arriving at the diameter or circumference of the tree by means of an estimated thickness of the bark, which is an unfair method because the bark of different species of trees varies as to thickness." Here it would be necessary according to the testimony of the expert, to count the "rings" of each tree (as he could upon the stumps) and then estimate and add the number and growth of the first years of life when no rings were formed.

The immediate question here involved was not decided in *Furman v. A. C. Tuxbury Land & Timber Co.*, 112 S. C., 71, 99 S. E., 111, or *Broad River Lumber Company v. Middleby*, 4 Cir., 194 F., 817. There was a Federal case later than the latter, *Colleton Mercantile & Mfg. Co. v. Gruber*, D. C., 7 F. (2d), 689, 695, in the Eastern District of this State, wherein the excellent opinion by the late Judge Ernest F. Cochran contains a valuable review of the authorities. The contention was made by the defendants, as here, that future timber growth was not included in the conveyance. The learned Judge concluded that there was no authoritative decision directly in point and that the case would have to be decided upon general principles, which were adverted to at greater length than here attempted. He concluded that the words in the description in the grant, "All * * * timber now standing, or which may be standing * * * during the term hereinafter named," were conclusive of the intention of the parties. I think the same intention is to be gathered from the careful consideration of the deed before us without the quoted words contained in the deed in the *Colleton case* and also without the words "now" in the *Crawford case* and in the *Wilson case*, "suitable for milling purposes," and the latter without specified time for removal.

In reading the authorities I have found it occasionally carelessly said, without analysis of the cases, that the majority rule is that contended for by appellants, that a con-

veyance of timber is of timber then upon the land, and of such claimed majority are the Georgia cases cited in the opinion of the Chief Justice.

However, study of the texts shows that they do not state the rule so as to include this timber deed which contains no description by dimensions, no words denoting an intention contemplating only the timber existing at the date of the conveyance and no designated special purpose for which the timber would be used.

Ruling Case Law, volume 17, at page 1094, says: "It is generally held that a provision as to the size or suitability of the timber refers to the time when the contract or grant was made in the absence of anything to show a contrary intent," citing our case of *Wilson Lumber Co. v. D. W. Alderman & Sons Co., supra.* In 38 C. J., 161, 162, is the following, also citing in the footnote our *Wilson-Alderman* decision: "While there are decisions to the contrary, the general rule is that where standing timber of designated dimensions or to be used for designated purposes is sold, only such timber is conveyed as measures up to such dimensions or is suitable for the purpose specified at the date of the deed or contract of sale, and does not include timber which may become so subsequently by growth, or by changed conditions in the lumber market, or by change in custom, unless, as is sometimes the case, the instrument itself expresses a different intention."

The more recent text in 34 Am. Jur., pages 503, 504, contains the following: "The timber passing under a sale or grant is, of course, determined by the intention of the parties to the contract or conveyance as manifested by the terms or expressions therein descriptive of the property. A contract not mentioning the dimensions of the timber sold or reciting that such timber is then standing on the land, but giving the purchaser a right to cut any timber it may desire, has been construed as permitting the purchaser to have all the timber it may desire at any time during the life of the contract." This text cites *Wilson Lumber Co. v.*

*D. W. Alderman & Sons Co.* for the identical statement quoted above from R. C. L., not applicable here, I think.

Examination of the cases cited to support the supposed majority rule (see some of them in note, 55 L. R. A., 524) discloses that many of them contain descriptive or otherwise restrictive words such as our *Crawford* and *Wilson cases, supra,* indicating an intention to limit the conveyance to the timber coming within the description or restriction at the time of the deed. None such appear in the instant deed, although it will not be gainsaid that they could have been easily inserted had they been expressive of the intention of the parties.

Turning to the Georgia cases, it will be found that in *Vandiver v. Byrd-Matthews Lumber Company,* 146 Ga., 113, 90 S. E., 960, the conveyance was of "all the timber of whatever kind and description now growing or being upon" the land. In *McRae v. Smith,* 164 Ga., 23, 137 S. E., 390, the question was whether a purchaser or his assignee who had already cut the timber large enough for ordinary purposes could return years later within the term and cut the smaller trees for cooperage, barrel stave material. It will thus be seen that neither of these cases is really applicable here. The Georgia Court concludes its opinion in *Neal Lumber & Manufacturing Co. v. O'Neal,* 175 Ga., 883, 166 S. E., 647, 651, in part as follows: "We are aware that our construction of the lease in question may not be in accord with the views expressed by some other Courts in like cases, but it is in harmony with previous adjudications by this Court and with the weight of authority. See 28 Am. & Eng. Enc. Law, 542 (5), 38 C. J., 161, § 37 (b), and citations." But the citation from Corpus Juris does not sustain the contention of the appellants in this case as will be seen by reference to the quotation of it above, and the other citation of the Court, 28 Am. & Eng. Enc. Law, 542 (5), as follows, is equally unavailing: "Sale by dimensions—As of What Time,—in a sale of standing trees of a certain size it has been held on the one hand that the question of size

should be determined when the tree was reached, without regard to the growth between the time of making the contract and the time of cutting; on the other, that the dimensions given referred to the date when the conveyance was executed."

American Jurisprudence cites in support of its above quoted text the case of *McMillan v. Gurdon Lumber Company,* 189 Ark., 628, 74 S. W. (2d), 631, 632, 75 S. W. (2d), 229. That case is also reported in 94 A. L. R., 1414, and is made the subject of an annotation commencing at page 1420. The deed there provided ten years to cut and remove instead of forty years, as here, and the grantee's right to cut and remove was of such timber as it might desire. It seems to me that such words would add nothing to the grant here of all timber. The Court there held that the purchaser was not limited to "timber" on the land at the time of his conveyance because the deed or contract "does not mention the dimensions of the timber sold and does not in express terms provide that the timber sold is that now standing on the land."

In the annotation referred to occurs the following: "The fact that there was no practical way to ascertain the growth of a given tree between the time of the contract and the time it might be cut thereunder was noted in *Bryant v. Bates,* 1897, 39 S. W., 428, 19 Ky. Law Rep., 191, as ground for holding a purchaser of saw-log timber, consisting of trees of certain diameter and up at the stump, entitled to remove all trees reaching that diameter at any time during the three years in which it might be cut and removed."

In the Virginia case of *Adams v. Hazen,* 1918, 123 Va., 304, 96 S. E., 741, at page 746, it was said by the Court: "We are of opinion that in the instant case, in which the contract does not limit the purpose for which the timber was bought, beyond the stipulation that it must be 'merchantable,' 'all merchantable timber,' as those words are used in the contract under consideration, is all timber, whatever its size, that had at the date of the contract, or may have during the

life of the contract, a commercial value in that locality, for the purpose of manufacture into lumber, or for any other purpose."

I agree that the trial Judge erred when he held that the timber deed included "sprouts and brushes" and that such were thereby conveyed, but it was harmless error, for the defendants made no effort to prove that such trees as were cut by the plaintiff did not come within the description of the deed, were not "timber," at the time of cutting. Their testimony, hereinabove referred to, seems to have been aimed at establishing that some of the trees cut were not "timber" at the time of the conveyance and that some even grew thereafter in "old fields."

My conclusion is, as indicated, that the deed vested in the grantees and their assigns the right to cut and remove all trees that at the time of cutting within the period granted, forty years, came within the description of "timber," used in the deed. Under the testimony this would dispose of appellants' counterclaim adversely to them.

It should be added that the testimony shows that the parties in interest were in accord with this construction, it was their construction, until this action was brought as the result of a boundary dispute. The present owner of the land did not testify, but her husband did and he seems to have acted for her in all matters relating to the deed and to their removal of the timber on the disputed area which resulted in this suit.

He testified on cross examination that in 1932, a former owner of the timber under the deed in question cut a "good bit" of the timber in a salvage operation after a fire, without protest from him or his wife; likewise that there was no dispute or protest concerning the cutting by the respondent in 1937 and 1938 of the pine on the hill, and that respondent also at that time cut some timber in the swamp. He also testified that he had cut some small timber on the property with the permission of respondent's foreman, which he sought. He further said that he had only recently found

the old plat, which differed from the plat recorded with the deed, and that with it to "back him up" he was making the contest; he answered a question of the presiding Judge that he claimed the timber because respondent had cut and left it and that was the only reason he claimed it, that under the deed respondent had only 358 acres which it had already cut.

The conduct mentioned was an acquiescence in what I think was the proper construction of the deed, adopted by the owners of the timber, and a waiver of the construction now asserted by Grooms and his wife by way of counterclaim when brought into Court to defend an action for trespass. *Cunningham v. Atlantic Coast Lumber Corporation,* 117 S. C., 240, 109 S. E., 145. "A practical construction put on a contract by a party thereto may be conclusive against him on the question of what timber was actually sold." 38 C. J., 157.

I think the Circuit Judge was correct in refusing to submit to the jury the issues of abandonment and estoppel. I do not think that the evidence was susceptible of a reasonable finding of either, but no useful purpose would be served by here attempting to review it. It should be noted that the defendant logger, the witness, Dangerfield, testified that he did not know that he was cutting on plaintiff's timber land, he thought it was other, adjoining land of Grooms which was not included in the timber deed; and I do not think that it can be reasonably inferred from the testimony that respondent or its agents knew it until immediately before this action was brought.

The opinion of the majority, and therefore the judgment of this Court, leaves open the question of whether the evidence of estoppel was sufficient for submission to the jury, but holds that the testimony concerning the alleged abandonment by the respondent of the timber in Four Holes Swamp (the *casus belli*) sufficed for the submission of that issue. With the latter I cannot agree after careful study of the record; I do not think that the cessation of cutting after removal of the timber from the upland and branch flats is

evidence of intention to abandon the swamp timber, evidently valuable, years within the contract period.

Similarly I do not think that the failure of respondent to return the timber for taxation in 1938 constitutes evidence of its abandonment of the swamp timber to the land owner. Consideration of this need extend no further than that the latter is bound by the terms of the timber deed; as the subsequent owner of the land she stands in the shoes of the grantor in that instrument. It contains a covenant that he "shall and will promptly pay all taxes that are now due and that hereafter may become due on the said land and timber * * *." Thus so far as the contract is concerned the delict of failure to return the timber for taxation is not the delict of the respondent but of the owner of the land, the successor in title to the timber-grantor, and it does not seem to me that it properly lies in her mouth to claim a forfeiture of respondent's otherwise remaining rights under the contract by reason of her violation of its terms.

For the foregoing reasons I think all of the questions presented by the appellants should be decided against them, and the judgment below affirmed. I regret that being of this opinion I cannot concur in the denial of the petition for a reargument of the case.