## MOORE & CO. *v.* DAUGHERTY, ALLEN & CO.

1. Where the plaintiff and the defendant claim title to timber from a common source, and the plaintiff's deed is the older, it is not necessary for the plaintiff to show title in the common propositus. If the older deed is not attacked, it will prevail over the younger deed.

2. Equity will restrain a solvent trespasser from committing repeated and continuous trespasses. Where the claim of title of both parties is derived from a common source, and the plaintiff's deed is the older and is not attacked for any defect or irregularity, and where the defendant, though solvent, threatens to continue to go on the land from day to day for the purpose of hacking, scraping, and removing the crude gum from the trees (which have been boxed for turpentine), equity will restrain the defendant from such recurring trespasses.

3. In an action to enjoin the boxing and scraping of pine trees for the purpose of extracting and removing the crude gum, it is irrelevant to show that in another case a party not in privity with the defendant had obtained against the plaintiff a pendente-lite injunction against doing acts of the same nature as those the plaintiff seeks to enjoin in the present action.

NOVEMBER 17, 1916.

Petition for injunction. Before Judge Summerall. Clinch superior court. April 15, 1916.

Moore & Company and Daugherty, Allen & Company are each engaged in the business of extracting gum from pine trees and manufacturing it into turpentine products. The former filed a petition to enjoin the latter from cutting, boxing, and extracting the crude gum from the pine trees on two lots of land in Echols county, alleging that the cutting, boxing, and working of the timber as the defendants were doing and threatening to do would not only be a continuing trespass giving the plaintiffs a new cause of action against them from day to day, thereby resulting in a multiplicity of suits, but would be a destructive trespass on account of which damages would be incapable of exact computation, and for which there would be no adequate and complete remedy at law. In their answer the defendants denied the title of the plaintiffs to the timber and their right to injunction, and averred that defendants had completed the boxing of all the timber upon the two lots of land, and that it was their intention to work the same for turpentine purposes in the usual manner; and they offered to give bond to protect the plaintiffs on account of any recovery for damages. On a hearing for an interlocutory injunction it appeared that the land in controversy was originally granted to Thomas Taylor. The plaintiffs introduced in evidence a deed from Martha A. Cramer and others, describing themselves as the sole heirs at law of Thomas Taylor, to Rollin J. Nelson, dated January 2, 1896, and mesne conveyances from Rollin J. Nelson to themselves, conveying the right to the timber on the land for turpentine purposes. The defendants introduced in evidence a quitclaim deed from Martha A. Cramer, describing herself therein as the surviving heir at law of Thomas Taylor, to J. L. Sweat, dated September 1, 1915; and a lease from J. L. Sweat to themselves, granting the right to use the timber for turpentine purposes. The court refused a temporary injunction, but provided in the judgment as follows: "It appearing that irreparable loss will result unless the turpentine boxes cut upon lots 317 and 318 in the 13th district in Echols county are worked pending said suit, by getting the crude gum dipped therefrom and distilled, and the said boxes cornered, hacked, and chipped, and the same raked

around and protected from fire, it is ordered that in addition to the solvency of the defendants that they give bond with good security, which they have voluntarily offered to do, in the sum of three thousand dollars, to be approved by the clerk of said court, conditioned to pay to plaintiffs such damages as they may be entitled to recover upon the trial of said case, provided they shall prevail upon said trial, with the right to enter judgment thereon the same as upon bonds given in appeal cases; said defendants to keep an accurate, full, and complete account of the working of said boxes and of all of the crude gum dipped and distilled therefrom, and to make and file a report thereon with the clerk of said court on said trial." The plaintiffs excepted to this judgment.

*Whitaker & Dukes,* for plaintiffs.    *J. L. Sweat,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. Though the plaintiffs alleged that they had perfect title to the land, they failed to exhibit such title, and did not bring themselves within the timber cutters' act (Civil Code of 1910, § 5504). If the plaintiffs are entitled to a writ of injunction, it must be based on equitable principles. Both parties claimed title under conveyances which recited that the land had been granted to Thomas Taylor and that the grantor in each conveyance claimed to be his heir at law. The plaintiffs' deed was made by Martha A. Cramer and others claiming to be his only heirs at law. So far as the abstract of the deed in the record discloses, this deed is joint and does not purport to convey the undivided interest of any particular heir. The deed under which the defendants derive title to the timber purports to have been made by Martha A. Cramer, and contains a recital that she is the surviving heir at law of Thomas Taylor. Thus it appears that both claim title under Martha A. Cramer, and there is no testimony attacking the genuineness of either deed. The plaintiffs' deed, being many years older than that under which defendants derive their title, will prevail over the younger deed. It appearing that both parties claim under a common grantor, the plaintiffs are relieved of the necessity of showing title into such common grantor. *Florida Yellow Pine Co.* v. *Flint River Naval Stores Co.,* 140 *Ga.* 321 (78 S. E. 900). As between the plaintiffs and the defendants, the plaintiffs are vested with the superior title,

which would authorize a recovery for the alleged trespass. It remains, therefore, to determine whether under the allegations and facts appearing at the hearing they showed a right to an interlocutory injunction.

2. One ground of the plaintiffs' claim for an injunction is that the defendants declared their intention to operate the trees which they had boxed, for the purpose of utilizing the crude gum, that this would amount to a frequent trespass on their property, and that the frequency of trespasses is a ground for equitable interference. It is now well established that a continuing trespass will be restrained by injunction until the final hearing, although the parties may be solvent. The theory of equitable jurisdiction on this ground is discussed by Mr. Justice Cobb in *Gray Lumber Co.* v. *Gaskin,* 122 *Ga.* 342 (50 S. E. 164). As the learned Justice very pertinently remarked in that decision, "Ought the plaintiff to be harassed and annoyed by being required to bring a new suit every day as long as the trespasses continue, when the whole controversy could be settled in one suit?" It would be abhorrent to a sense of justice that a wealthy trespasser could say to the true owner of land, "I know that I have no title and no right to cut the trees on your land, or to work the same for turpentine; but because of my wealth I have the right to use your property for my personal gain by repeated and continuous trespasses, and your only remedy is an action for damages." The plaintiffs appealed to the trial court to protect the property from loss resultant from continuously operating the turpentine farm. As the plaintiffs have the superior title, no equity can arise in favor of the defendants to protect the plaintiffs in the management and control of their property against their express and vigorous dissent. As was said in *Loudermilk* v. *Martin,* 130 *Ga.* 525 (61 S. E. 122), "Whether the defendants were solvent or insolvent, the plaintiff, to prevent a multiplicity of suits for damages occasioned by trespasses, could maintain an injunction against the cutting and removal of timber by persons who had no right to cut and remove it, where . the evidence showed that the trespasses were being committed and would be continued from day to day." We do not see that there is any difference between a trespass committed by hacking and scraping trees and . the removal of the crude gum from day to day, and one committed by cutting and removing the

trees. In *Strain* v. *Stark,* 135 *Ga.* 687 (70 S. E. 568), the plaintiffs and defendants were in possession of adjoining lots of land under claim of title, and there was a dispute between them as to the location of the dividing line. The defendants were proceeding to cut the timber on the disputed territory, and the plaintiffs filed their petition to enjoin them. On an interlocutory hearing the evidence was conflicting as to the location of the dividing line; and this court held that it was proper to grant a temporary injunction until the final hearing. In *Florida Yellow Pine Co.* v. *Flint River Naval Stores Co.,* supra, the plaintiff sought to enjoin the defendant from cupping, boxing, and extracting gum from the trees on a described tract of land. The defendant was engaged in that work at the time application was made for a writ of injunction. The evidence tended to show that the defendant would continue to cup, box, and extract gum from the trees; and the court granted a temporary injunction. This court upheld that judgment on the ground that a trespass may be restrained in equity where it is a continuing one and will give rise to a multiplicity of suits, although the trespasser may be solvent. Under the facts of the case it was an abuse of discretion to refuse an injunction.

3. Over objection the court received in evidence a certified copy of an interlocutory order passed in the case of T. J. Pierce *v.* Moore & Company, on January 29, 1915, enjoining the latter from working the timber on the two lots of land in controversy until the final termination of the case, or otherwise ordered by the court. This evidence was clearly inadmissible. The parties to the case are not the same. The judgment is not final, but only preservative of the status. The defendants showed no privity with Pierce, and such testimony could not be otherwise than harmful to the plaintiffs.

*Judgment reversed. All the Justices concur.*