24691. CARMICHAEL *v.* TEXAS COMPANY.

752

DECIDED JANUARY 29, 1936.
ADHERED TO ON REHEARING, FEBRUARY 29, 1936.

*Joel B. Mallet, C. L. Redman,* for plaintiff in error.

*John M. Slaton, W. E. Watkins,* contra.

JENKINS, P. J.   This trover suit was for the recovery by the alleged owner of certain equipment for a gasoline and oil filling-station and 110 gallons of gasoline from the defendant, who had become their purchaser at a sale under a distress-warrant proceeding previously brought by the defendant.   The evidence was undisputed that the plaintiff as the actual owner of the equipment had merely loaned it to the person who was the defendant in the former distress warrant, and had afterwards loaned it to another person who had been in possession at the time of the former levy under the defendant's distress warrant.   Both bailees had been agents of the plaintiff to conduct a filling-station for the sale of its gasoline and oil.   In the trover proceeding, it was undisputed that at the sale under the distress warrant the second bailee and former agent of the plaintiff acted as agent of the present defendant in bidding the property in; that the assistant district manager and a "local attorney" for the present plaintiff were also present at the sale, that the attorney bid on the property, and that before the sale this assistant manager "told [the present defendant] time and time again that it was the property of the Texas Company," the present plaintiff.   The evidence indicates that the plaintiff's "local attorney" was then under the impression that the title of the Texas Company consisted of a recorded retention-of-title contract, under which the landlord's lien of the present defendant would be contested, and so stated to the attorney of the defendant.   It is plain that the defendant was thus put on notice that the plaintiff claimed the title to the property as against the defendant's claim, and that such claim of title would be asserted.   Under this testimony, the present defendant was not an innocent purchaser without notice, and was not entitled to claim an estoppel against the present plaintiff, even though it should be assumed that the plain-

tiff could be bound by the presence of its "local attorney" at the sale, and his expression of opinion as to the nature of the plaintiff's title and as to what method would or would not be adopted by the plaintiff to protect it. As to the equipment, the verdict in favor of the plaintiff was demanded.

With reference to the 110 gallons of gasoline, under a written stipulation of the parties that, if the plaintiff should obtain a verdict and judgment for this item, judgment could be rendered for the market-price on the date of the judgment, the verdict and judgment in favor of the plaintiff included the specific sum of $22 to cover such value. As to this item, it appears that during his charge the judge stated: "Under the contentions, gentlemen of the jury, regardless of how you find on the other items of the suit, it would be necessary for you to find in favor of [the defendant] for the gasoline. Is that right?" Counsel for the defendant replied, "Yes, sir." The record fails to show that any negative response was made by the plaintiff or its counsel. In their brief it is argued that counsel then made a denial, and that only part of the colloquy was reported by the stenographer. The record, with the statements quoted, being certified, the court must be governed thereby. The instruction and inquiry of the court, the reply of the defendant, and the silence of the plaintiff, as indicated, show in effect an admission in judicio by both parties that the evidence demanded a finding for the defendant as to the gasoline. This portion of the verdict and judgment was therefore illegal. The judgment denying a new trial to the defendant is affirmed on condition that this illegal item be written from the recovery on or before the time when the remittitur of this court is made the judgment of the trial court; otherwise the judgment is reversed.

*Judgment affirmed on condition. Stephens and Sutton, JJ., concur.*

### ON REHEARING.

JENKINS, P. J. The motion for rehearing was granted in this case, because we were of the opinion that the evidence as to an estoppel against the plaintiff was such as to raise a jury question and require a consideration of the special grounds of the defendant's motion for new trial, if the plaintiff was bound by the statements made by its local attorney. On the grant of the rehearing, all exceptions and the entire record have been carefully recon-

sidered. Upon a renewed consideration of the evidence, we think that the ruling that a verdict for the plaintiff was demanded on the question of its title to the filling-station equipment sued for in trover is correct. It is true that the person who was in possession of the equipment at the time of levy of the previous distress warrant, under which the defendant acquired his claim by purchase at public sale, testified that he did not know whether the property belonged to the plaintiff or to a third person; but in another part of his testimony he stated that it belonged to the plaintiff. The testimony of the assistant manager of the plaintiff was also positive that it was the plaintiff's property; and this evidence can not be taken as merely hearsay or based only on office records. The filling-station lease, the station-agency contract, and other papers introduced also showed ownership in the plaintiff. Therefore the mere uncertainty expressed by the person formerly in possession of the equipment in a part of his testimony, without positively stating that the property did not belong to the plaintiff or that it belonged to some one else, was not sufficient to raise an issue for the jury on the question of ownership of the equipment.

The question of estoppel, which impelled us to grant the rehearing, presents greater difficulty. It is earnestly argued for the defendant, that, while the plaintiff's assistant manager told him before the execution sale, where the defendant bought the property, that it belonged to the plaintiff, and that this evidence, if nothing further appeared, would have demanded a verdict in favor of the plaintiff because it would have shown that the defendant was not a bona fide purchaser, there was additional testimony to the effect that the first statement of the assistant manager was withdrawn and nullified by later statements made at the sale by the plaintiff's local attorney in the presence of the assistant manager; and that these statements demanded a verdict in favor of the defendant on the issue of estoppel, or were at least sufficient to raise a jury question. An attorney for the defendant testified, without contradiction, that the local attorney for the plaintiff stated at the sale, in the presence of the assistant manager: "Go and sell it; we are not going to make a claim to that particular property;" that "they abandoned the claim to that particular property;" and that the local attorney "admitted that it was subject to the rent." Reference was made in the original opinion to other testimony that the

local attorney had also stated, "I am going to contest" the defendant's lien. On the grant of the rehearing, we were of the opinion that all of this evidence as to statements by the local attorney would have presented a jury issue, if it were assumed, as in the original opinion, that the plaintiff was bound by such statements. We are now still of the opinion that this would be true, provided that the local attorney or the assistant manager, in whose presence the statements were made, had authority from the plaintiff to abandon the plaintiff's ownership of the disputed property, or to make statements indicating such an abandonment. If the testimony had been silent as to authority, it may be that it could be presumed as to the assistant manager, although not as to the local attorney. However, there is no rule of law, as contended, that an assistant manager of a corporation is its "alter ego," whose actions or statements, in the absence of authority, would bind the corporation in an abandonment of corporate assets. Such authority was subject to proof. The assistant manager testified: "We did not authorize [the local attorney] to make a settlement for us. It is true that he was authorized to represent us, but not in case of a settlement to retention of the property; in fact we told him not to. He was our attorney this morning. I was present at the sale, but I did not make any objection because I couldn't; it was out of my hands. . . I have not got the right to tell any attorney to abandon a claim or fix a price for the company. That has to be handled through the legal department." This evidence was uncontroverted. Since its effect was to show an entire absence of authority in either the assistant manager or the local attorney to abandon the property or any claim therefor, statements by the local attorney to that effect, being thus unauthorized, would not have bound the plaintiff. Accordingly, we are of the opinion that on the issue of estoppel a verdict for the plaintiff was demanded with regard to the equipment, as was held in the original decision. Moreover, even if our construction of the evidence on the question either of ownership or of estoppel should not be correct, and even if a verdict in favor of the plaintiff was not demanded, so as to require a consideration of the special grounds, these are without merit.

As to the admission of evidence, the court did not err, in admitting, over the objection of irrelevancy, the filling-station agency

contract and the lease made with the person who bought in the property for the defendant at the execution sale, since even if these papers showed no knowledge by such person of the plaintiff's ownership, under his testimony that he signed them in blank, they were nevertheless pertinent as cumulative evidence tending to show that the plaintiff actually owned the disputed personal property at the filling-station.

In two special grounds exception is taken to instructions that, if the plaintiff had established to the satisfaction of the jury that the title to the property was in it when the suit was brought, they should find for the plaintiff, "unless you should find by some act of the plaintiff that this title had been divested, and that it is no longer in the plaintiff because of such act;" and, later in the charge, that "if you believe that the plaintiff's contentions, or claim of title, under the instructions which I have given you in charge, has been refuted by the defendant in this case, and that the defendant's purchase of this property constituted title in him [to] this property or any portion thereof, then the plaintiff would not be entitled to recovery, and you would find a verdict for the defendant." It is contended that the expressions as to divesting of title from the plaintiff and refuting of title by the defendant were confusing in not stating the principle in the Code, § 105-304 relating to estoppel against one "who silently stands by and permits another to purchase his property without disclosing his title," and thus imposed a greater burden on the defendant than this rule required. It appears, however, from the general charge that even though such an estoppel was not pleaded, and there was no written request for an instruction thereon, the judge fully explained this contention of the defendant to the jury. Immediately following the first statement quoted, to which exception is taken, the judge charged in terms the language of the particular statute relating to estoppel. In the instruction last quoted the judge, in referring to the defendant's refutation of title, connected this language with the preceding instructions by the statement, "under the instructions which I have given you in charge," in which he had already charged not only the contention but the rule of law as to estoppel.

The remaining two grounds of the motion attack references in the charge to the agency of the person who bid in the property for the defendant at the execution sale, and as to the imputation to the

defendant of previous knowledge by this person of plaintiff's owner-ship of the property. It is contended that the court should have charged, in connection with the instructions given, the statutory principle that "the law imputes to the principal, and charges · him with, all notice or knowledge relating to the subject-matter of the agency, which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may *previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it.*" Even if we could properly assume, as contended, that it was a jury question whether the previous agent or bailee of the plaintiff, who became subsequently the agent of the defendant, had in his mind at the sale the plain-tiff's ownership of the property, or had acquired his knowledge of such ownership so recently as reasonably to warrant the assump-tion that he still retained it, in the light of the proof that this person had for many months operated the station and handled the property of the plaintiff, and did not sever his connection with the plaintiff by letter until after the levy on the property a few weeks before the public sale, still it does not appear that the instructions relating to the agency and the imputed knowledge of this person could have been prejudicial to the defendant. This is true for the reason, as pointed out in the original decision and now con-ceded by the plaintiff in error, that the evidence was undisputed that the defendant was fully informed and had knowledge before the sale that the plaintiff was the owner of the property. The defendant himself having such knowledge, without dispute, ques-tions and charges relating to imputed knowledge from his agent became immaterial. The sole controlling question was whether, in spite of the previous knowledge of the defendant, the subse-quent statements by the local attorney in the presence of the as-sistant manager were authorized by the plaintiff, so that such statements nullified the previous notice and knowledge, and thus created an estoppel against the plaintiff. On that question, and for the additional reasons stated, we are constrained to adhere to our original decision, and affirm the judgment on the condition stated in our first opinion.

*Judgment adhered to on rehearing. Stephens and Sutton, JJ., concur.*