32713. McENTYRE *v.* BURNS *et al.*

240

Decided March 14, 1950. Rehearing denied March 27, 1950.

*H. C. Schroeder* and *George D. Anderson,* for plaintiff in error.
*T. B. Higdon,* contra.

MacIntyre, P. J.   (After stating the foregoing facts.)   ■ The first contention is that the defendant was an innocent purchaser for value, not being charged with any notice of the title-retention contract between Mr. and Mrs. Brownagle and C. V. Nalley & Company, transferred to the plaintiffs, in that the motor number of the Chevrolet sedan was shown on the record at DAA-Y)9521 whereas the motor number of the Chevrolet car referred to in the title-retention contract was DAA-409521. The registration of the title-retention contract was governed by the laws relating to the registration of mortgages on personal property, except that it was required to be recorded within 30 days from its date. Code, § 67-1403. The instrument shall be recorded in the county where the mortgagor resided at the time of its execution if he is a resident of this State. Code, § 67-108. The contract here was filed for record in the office of the clerk of the Superior Court of Clayton County, Georgia, on July 8, 1948, and was recorded on July 17, 1948, but the motor number was incorrectly shown as DAA-Y)9521. The defendant admitted that he was in possession of a Chevrolet sedan, motor number DAA-409521, but contended that the record just mentioned did not put him on notice as to that car. In support of this contention he cites and relies on the Code, § 67-111 which provides as follows: "A mortgage recorded in an improper office or without due attestation or probate, or so defectively recorded as not to give notice to a prudent inquirer, shall not be held notice to subsequent bona fide purchasers or holders of younger liens. A mere formal mistake in the record shall not vitiate it." However, by the act of 1889 (Ga. L. 1889, p. 106), codified as Code, § 67-2501, it was provided: "Deeds mortgages, and liens of all kinds, which are required by law to be recorded in the office of the clerk of the superior court, shall, as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien bind-

ing the same property, take effect only from the time they are filed for record in the clerk's office. The said clerk shall keep a docket for such filing, showing the day and hour thereof, which docket shall be open for examination and inspection as other records of his office." The obvious conflict between these two sections has been resolved in favor of § 67-2501. In *Buchanan* v. *Georgia Acceptance Co.*, 61 *Ga. App.* 476, 477 (6 S. E. 2d, 162), it was said: "Since the passage of the act of 1889, p. 106, Code, § 67-2501, the owner and holder of a deed, mortgage, or conditional-sale contract (Code, § 67-1403), and other liens required by law to be recorded in the office of the clerk of the superior court, has been protected by the filing of his paper with the clerk of the court, whose duty it was to record the filing on a public docket required for that purpose. Improper record, or no record at all, has no effect on the efficacy of the filing. *Willie* v. *Hines-Yelton Lumber Co.*, 167 *Ga.* 883 (146 S. E. 901). It seems that Code, § 67-111, which was in our Codes before 1889, was necessarily repealed in so far as it conflicted with the act of 1889, Code, § 67-2501. The theory of the foregoing rule is that if any injury is done by a failure to record a paper, or by the improper recording of it, the clerk will be liable to the injured party for a breach of duty, and that the *filing* puts the world on notice as to the contents of papers filed for record, whether they are recorded or not." (Italics ours.) In *Thomas* v. *Hudson*, 190 *Ga.* 622, 626 (10 S. E. 2d, 396), after pointing out that the act of 1889, supra, contained the usual repealing clause, it was said: "Construing these two present Code sections, it must be said that, even though 'the act approved March 24, 1933 . . , adopting the present Code of Georgia, had the effect of enacting into one statute all of the sections of that Code,' the rule of construction obtains that 'where two sections of the Code are found to be in irreconcilable conflict, and both sections are derived from acts of the legislature, this conflict must be settled by resort to the original acts from which the conflicting sections are derived, and that section which is derived from the later act of the legislature must control.'" The later act here is, of course, the act of 1889, supra, codified as Code, § 67-2501, which must control. In headnote 1 of the *Thomas* case it was ruled: "The due filing for record

of a valid mortgage on realty affords good constructive notice of the instrument to subsequent purchasers and lienholders claiming under the mortgagor, even though the indexing and recording of the mortgage may be erroneously made on books not relating to realty." In headnote 2 it was ruled: "Assignees from the mortgagee of such an instrument thus filed for record will not lose priority over subsequent purchasers or lienholders from the mortgagor by the fact that no assignment of the prior mortgage is recorded or filed for record." See also *Blakely Artesian Ice Co.* v. *Clarke,* 13 *Ga. App.* 574, 578 (79 S. E. 526); *Brown* v. *Aaron,* 20 *Ga. App.* 592, 593 (3) (93 S. E. 258); *Merchants' &c. Bank* v. *Beard,* 162 *Ga.* 446 (134 S. E. 107); *Willie* v. *Hines-Yelton Lumber Co.,* 167 *Ga.* 883 (146 S. E. 901). It follows from the above that notwithstanding the error of the clerk of the superior court in recording the motor number of the 1946 Chevrolet sedan, the filing in his office of the title-retention contract on July 8, 1948, within 30 days after its execution, was sufficient notice to all subsequent purchasers of the car covered ·by such contract, to wit, one Chevrolet sedan, motor DAA-409521, protecting also the transferee of C. V. Nalley & Company, the plaintiffs here, against the claims of all alleged innocent purchasers for value, including the defendant who purchased the car from C. J. Brownagle on September 21, 1948.

■ One ground of the motion for new trial complains that the direction of the verdict was error, and that a verdict could have been returned for the defendant, because it was not shown that C. V. Nalley & Company had title to the car. The automobile which the evidence shows Mr. and Mrs. Brownagle purchased from C. V. Nalley & Company, and which was referred to in the contract as one Chevrolet sedan, motor DAA-409521, was identified beyond question as being the automobile which was in the possession of the defendant. He admitted that he had such a described automobile and that he bought it from C. J. Brownagle. The evidence thus discloses that the parties to this litigation are claiming under a common grantor. In these circumstances it is unnecessary to show title in the common grantor. Code, § 33-101; *Moore* v. *Daugherty,* 146 *Ga.* 176 (91 S. E. 14); *Horton* v. *Wilkerson,* 192 *Ga.* 508 (1) (16 S. E. 2d, 8).

■ It is insisted that the direction of a verdict for $1702.14

was error for the reason that the plaintiffs' evidence showed that the market value of the car was $1900 at the time of the institution of the trover action and also showed values of $500, $300 and $100, and that the jury could have found a verdict for a less amount than $1702.14. Movant stresses the argument that a jury is not obliged, in a trover action, to accept the estimate of a witness as to value. The case here, however, turns on a different basis. It was undisputed that the plaintiffs had a claim of only $1650 in the car. They had elected to take a money verdict for the value of the car at the time of the conversion. Hubert M. Burns Jr. testified that the market value of the car was $1900. He also stated that the car was worth $500, $300 or $100, but it is clear from his testimony that he meant that since it was worth $1900 it was necessarily worth any sum less than that, proceeding on the theory that the greater includes the lesser. The only other testimony as to value came from the defendant, who admitted that the car was worth $1875 on September 24, 1948. The plaintiffs were entitled to recover in the trover action only the amount of their claim, $1650, plus interest at 7 percent per annum from September 24, 1948, to April 19, 1949, the date of the verdict (*Elder* v. *Woodruff Hardware &c. Co.*, 9 *Ga. App.* 484 (2), 71 S. E. 806; *Lucas* v. *Cornett*, 36 *Ga. App.* 50 (1), 135 S. E. 510), and a calculation will disclose that the amount of the directed verdict, $1702.14, was not excessive. The defendant, by reason of his solemn admission in judicio, is estopped to say that the car was not worth $1875, an amount which is greater than $1702.14, the amount of the verdict. Code, § 38-114; *Smith* v. *Wellborn*, 75 *Ga.* 799 (6); *Harper* v. *International Harvester Co.*, 21 *Ga. App.* 819 (1) (95 S. E. 306); *Carmichael* v. *Texas Co.*, 52 *Ga. App.* 751, 753 (184 S. E. 397). Hence, he can not be said to have been harmed by the verdict fixing the amount at $1702.14, which comports with the limit of the plaintiffs' recovery, and can not complain. *First National Bank of Chattanooga* v. *American Sugar Refining Co.*, 120 *Ga.* 717 (1) (48 S. E. 326); *Kendrick* v. *White*, 75 *Ga. App.* 307, 311 (43 S. E. 2d, 285).

■ Another ground of the motion for new trial complains that the case was not proved as laid, in that the petition sought to recover an automobile described as a Chevrolet sedan, motor

number DAA409521, and the evidence introduced by the plaintiffs showed the car to be a Chevrolet sedan, motor Number DAA-409521. As hereinbefore stated, it was undisputed that the automobile bought by Mr. and Mrs. Brownagle from C. V. Nalley & Company was the identical automobile which the defendant purchased from C. J. Brownagle. The retention-title contract, admitted in evidence without objection, showed the car to be a Chevrolet sedan, motor number DAA-409521. The defendant admitted that he had such an automobile with motor number DAA-409521. He contended merely that the designation of the motor number of the car sought in trover did not have a dash between the DAA and the number 409521, and that, therefore, he was not withholding the described automobile. Hubert M. Burns Jr. identified the title-retention contract showing the motor number of the car as DAA-409521. He testified that, while he could not remember the motor number of the purchased automobile, he knew the number at the time the papers were prepared and the motor number inserted, and that he raised the hood of the car and personally verified the motor number with that expressed in the papers. Mrs. Brownagle also identified the car in the possession of the defendant as the one which she and C. J. Brownagle purchased from C. V. Nalley & Company under the title-retention contract and note. Even if it could be said that the motor number expressed in the contract was technically different from that named in the petition, DAA409521, it is clear that only one car was purchased by Mr. and Mrs. Brownagle from C. V. Nalley & Company, and that that car was the car which was in the possession of the defendant. Thus, we do not have a case where the plaintiffs are trying to recover one particular automobile and the evidence shows a distinctly different automobile. There is no substantial variance between the allegations of the petition and the evidence. The evidence showing the motor number of the car held by the defendant to be DAA-409521, the plaintiffs might, had they so desired, have amended the petition to show the motor number accordingly, if there had been any objection to the introduction of the title-retention contract showing the motor number as DAA-409521. *Taylor* v. *Taylor*, 195 *Ga.* 711, 721 (25 S. E. 2d, 506), and cit. Though no amendment was filed, the

defect, if any, was cured by the verdict and judgment. Code, § 110-705; *Mercer* v. *Nowell*, 179 *Ga.* 37 (1) (175 S. E. 12); *Asphalt Products Co.* v. *Wright*, 60 *Ga. App.* 110, 112 (1) (2 S. E. 2d, 818). *Forsyth* v. *South Side Motors*, 79 *Ga. App.* 719 (54 S. E. 2d, 445) is particularly applicable here. There the petition in the trover action described the automobile as "One 1949 Ford club sedan, motor No. 98 BAL 2580." Proof showed the motor to be 98 BA 125850. An amendment to correct the error in the petition was disallowed by the trial judge. In reversing the judgment this court said: "In *Small* v. *Wilson*, 20 *Ga. App.* 674 (93 S. E. 518), a bail-trover case, this court held in substance that a mere clerical error in describing the property that constituted the subject-matter of the case may be cured by amendment if it is apparent from the two descriptions, that is, the description as shown by the original petition and the description as shown by the amendment, that the pleader had in mind the same property. This requirement is adequately met by the pleadings here. The proffered amendment expressly so alleges and leaves room for no other conclusion. Had the proffered amendment been allowed, there would have been no variance between the pleadings and the proof, and the case would have been proved as laid. The trial court therefore erred in rejecting the amendment and thereafter in granting a nonsuit." Obviously there is less dissimilarity in the present case, and since the petition was amendable the defect, if any, was cured by the verdict and judgment as before stated.

■ Finally, it is insisted that as the retention-title contract was recorded in Clayton County, Georgia, and not in Towns County wherein the Brownagles were "residing" at the time of the purchase of the automobile in question, it was improperly recorded and was abortive. Under the Code, § 67-108, the title-retention contract was required to be recorded "in the county where the mortgagor resided at the time of its execution, if a resident of this State." Mr. and Mrs. Brownagle were residents of this State at the time of the execution of the contract. The evidence conclusively showed their legal residence and domicile to be in College Park, Clayton County, Georgia. It was their custom to visit Hiawassee in Towns County, Georgia, at intervals "on vacations." The defendant emphasizes the statement of

Mrs. Brownagle that "at the time we bought the automobile we were residing up there," but a proper interpretation of her testimony is that she was not professing to use the word "residing" in a legal but in a loose sense. In fact, she stated in another part of her testimony that "I have never claimed that [Hiawassee] as my residence." Taking all of her testimony together, it amounts to this: They maintained their domicile and home in College Park, Georgia and traveled. At the time the car was bought they were in Hiawassee—fishing. They occupied a cottage when there, and went there to fish. They did not stay there for any appreciable period, but "were staying up there off and on." They were there just for fishing, "sometimes two days, sometimes three days, sometimes a week." She further stated: "I maintained my residence and my home was at College Park. Staying at a fishing camp is very different from maintaining a residence. This property up there was strictly for vacations." Certainly "residence" does not contemplate or embrace a fleeting visit or recurrences of brief sojourns of a few days at a time for the specific purpose, as here, of fishing or vacation. In *Farmer v. Phillips*, 12 *Ga. App.* 732, 734 (78 S. E. 353), it was said: "The words 'resident' and 'residence' import more than a temporary stay in a place for the performance of a single piece or job of work, especially where the workman at the same time has a home and permanent place of abode in another place; and the term 'residence' has been judicially defined as 'an abode or dwelling place, as distinguished from a mere temporary locality of existence.'" In that case a resident of Tift County, Georgia, moved his family to Worth County, intending to remain there until a house in which he expected to reside, located in Tift County, was completed and made ready for his family residence, when he intended to return to Tift County and resume his residence with his family therein. While temporarily sojourning in Worth County he executed a mortgage on personal property, and this mortgage was recorded in Worth County. This court held that the mortgage should have been recorded in Tift County and said: "Under these definitions of the term, applied to the facts of this case, we must conclude that Holt did not reside in Worth County when he executed the mortgage note to Farmer, but at that time was simply temporarily sojourning in Worth

County until his permanent residence should be ready for his reception in the County of Tift; in other words, that he had not abandoned his residence in Tift County by a temporary dwelling in Worth County for a short time, until he could carry out his intention of resuming his residence in Tift County." Where there is a conflict in the evidence as to residence, the question is one for the jury, but where, as here, only one reasonable conclusion can be reached from the evidence the court will resolve the question as a matter of law.

All of the grounds of the motion for new trial are without merit, and the court did not err in overruling the same.

The questions whether the title-retention contract was transferred to the plaintiffs by one with authority to act for C. V. Nalley & Company, and whether the instrument was entitled to record in the absence of the seal of the notary who witnessed the same, were not raised in the trial court, though argued in the brief of the plaintiff in error, and will not be considered here.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*