19373. PRESCOTT *v.* HERRING *et al.*

ARGUED JUNE 11, 1956—DECIDED SEPTEMBER 7, 1956.

*Franklin, Eberhardt, Barham & Coleman,* for plaintiff in error.
*W. J. Gibbons, H. B. Edwards, Sr., H. B. Edwards, Jr.,* contra.

MOBLEY, Justice. The plaintiffs as heirs at law of W. D. Herring, deceased, brought their petition to enjoin the cutting of timber by the defendant upon land owned by W. D. Herring at the time of his death. A temporary injunction was issued. The defendant filed general and special demurrers, which were overruled. Upon the trial and at the close of the evidence, the defendant moved for a directed verdict, which was denied. The jury returned a verdict for the plaintiffs. Thereafter, the defendant moved for a new trial and for a judgment notwithstanding the verdict. These motions were also denied. On all of the above judgments adverse to her, the defendant assigns error in her bill of exceptions.

■ The petitioners alleged: they are the surviving heirs of W. D. Herring, deceased; W. D. Herring died seized and possessed of the land involved in this suit; said land was conveyed to W. D. Herring by J. P. Prescott, deceased husband of the defendant, by deed on October 3, 1921; since the death of W. D. Herring, the petitioners have had possession and complete control of the land without any adverse claims from anyone; the defendant's acts will cause petitioners irreparable damage and permanent injury to their freehold. Whether or not the petitioners fail to bring themselves within the provisions of the "Timber Cutter's Act" (Code § 55-204), in that the abstract of title attached to their petition is not a perfect title (which question we do not decide), the allegations are sufficient to state a cause of action under the general principles of equity governing the enjoining of trespasses. "An injunction may issue in this State to restrain the cutting of timber, although the plaintiff may not have 'perfect title' as provided for in the 'timber-cutter's act' (Code § 55-204), where the damages would be irreparable, or where the trespass is a continuing one." *Anderson* v. *Thompson,* 192 *Ga.* 570 (1) (15 S. E. 2d 890) ; *Camp* v. *Dixon,* 112 *Ga.* 872 (38 S. E. 71, 52 L. R. A. 755).; *Moore & Co.* v. *Daugherty, Allen & Co.,* 146 *Ga.* 176, 178 (91 S. E. 14) ; *Kirkland* v. *Odum,* 156 *Ga.* 131, 135 (118 S. E. 706) ; *McArthur & Griffin* v. *Matthewson*

*& Butler,* 67 *Ga.* 134 (1). The general demurrer to the petition, on the ground that no cause of action was set out, was properly overruled. This was not an action for the recovery of land, and the prima facie right to bring this action to enjoin a trespass upon land owned and in their possession is in the plaintiffs as heirs of W. D. Herring. *Smith* v. *Fischer,* 52 *Ga. App.* 598 (184 S. E. 406). The special demurrers are without merit.

The petitioners introduced into evidence a deed from J. P. Prescott to W. D. Herring, dated October 3, 1921, conveying: "All that part of lot of land No. 81 in the 16th District of Lowndes County, Georgia, covered by what is known as the Bradford Mill Pond, the same being one hundred acres more or less, in the North East corner of said lot. Also a one-half undivided interest in five acres of land in the South East corner of lot of land No. 58 in the 16th District of Lowndes County, Georgia." The deed contained the following provision: "It is understood and agreed by and between the parties hereto that the water in said pond shall at all times be maintained at a height not exceeding 7½ feet from the mill sheeting of bottom floors in the millhouse and that a substantial post or some other device shall be erected at said place where the height at which the water shall be maintained, as aforesaid, will be permanently located or indicated." Only the land lying in lot No. 81 is disputed, and as to this the defendant makes two contentions concerning the deed. First, that under the deed the land conveyed *must* lie in the northeast corner of lot 81, and the evidence shows the alleged tresspass not to have occurred in the northeast corner of said lot; and second, that the land conveyed by the deed should be measured at the low-water mark of the pond. As to the first contention, the defendant would have lot 81, which is in the shape of a square, divided into quadrants, and contends that, if any of the land covered by Bradford Mill Pond lies outside the northeast quadrant, it is not conveyed by the deed. The deed expressly states that it conveys *all* of the land in lot 81 covered by Bradford Mill Pond, and that same contains 100 acres more or less in the northeast corner of said lot. In the construction of deeds, as well as other contracts, the paramount, essential, and controlling rule is to ascertain the intention of the parties. Code § 29-109; *Keith* v. *Chastain,* 157 *Ga.* 1 (121

S. E. 233). The deed conveys, first, all of that part of lot No. 81 in the 16th district of Lowndes County, Georgia; second, covered by what is known as the Bradford Mill Pond; third, the same being 100 acres, more or less; and fourth, in the northeast corner of said lot. It is clear from this description that the land conveyed is limited to that part of lot 81 in the 16th district covered by the Bradford Mill Pond. The amount of land conveyed is 100 acres more or less, and according to the deed is in the northeast corner of said lot. The evidence shows that the major portion of Bradford Mill Pond lies in the northeast corner of lot 81; that the millhouse and dam are located in the southeast corner of lot No. 58 (on the five acres conveyed by the deed which are not disputed), and said corner is adjacent to and immediately north of the northeast corner of lot 81; and that the pond extends from the northeast corner of lot 81 down through the lot to the south line thereof. The timber cut in this case was near the south line of lot 81. If the effect of the words, "in the northeast corner of said lot," is to limit the land conveyed to that which lies in the northeast corner, this provision would be inconsistent with the first provision in the deed which conveys all of that part of lot 81 covered by Bradford Mill Pond. In construing a deed, effect must be given, if practicable, to every part of the description of the land conveyed (*Reeves* v. *Whittle*, 170 *Ga.* 408 (4), 153 S. E. 53, 72 A. L. R. 405); and if two clauses in a deed are utterly inconsistent, the former shall prevail (Code § 29-109); but the intention of the parties from the whole instrument should, if possible, be ascertained and carried into effect. Applying these rules of construction to the deed in the instant case, we are of the opinion that it was the intention of the grantor to convey all that part of land lot No. 81 covered by what is known as Bradford Mill Pond, and not merely that part which lies in the northeast corner of lot No. 81. The words, "in the northeast corner," taken in connection with the whole instrument, are not sufficient to show an intention to exclude a part of the pond should any part thereof extend beyond such corner. If that part of the deed conveying all of lot 81 covered by Bradford Mill Pond were disregarded, the description in the deed would then be too indefinite for it to operate as a conveyance of title, because 100 acres more or less in the north-

east corner of lot 81 could not be located, the words "more or less" rendering such a description void. *Huntress* v. *Portwood*, 116 *Ga.* 351, 355 (42 S. E. 513). "In construing conveyances of land, effect is to be given to every part of the description, if practicable; but if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false or mistaken. What is most material and most certain in a description shall prevail over that which is less material and less certain." *Harris* v. *Hull,* 70 *Ga.* 831 (1). Giving effect to the entire description, it is clear that the parties intended to convey *all* the land in lot 81 covered by what is known as Bradford Mill Pond.

As to the second contention, in *Boardman* v. *Scott,* 102 *Ga.* 404 (3) (30 S. E. 982, 51 L. R. A. 178), it was held that, where land was conveyed and described as bounded by an artificial pond which had been in existence long enough to become a permanent body of water, the line of the land conveyed extended to the low-water mark of the pond at the date of the execution of the deed. But it was stated in that case that, as it was to be tried again, it could then "be investigated and determined whether or not, for any reason depending upon the particular facts as then made to appear, the high-water mark, rather than the low-water mark, should be treated as the true dividing line between the possessions of the plaintiff and the defendant." The principle of law stated in the *Boardman* case is merely a presumption which applies to those conveyances where land is described as being bounded by a pond and where there are no facts to show whether the parties intended the boundary to be the high-water or the low-water mark of the pond. In this case the deed recites that the water in the pond should at all times be maintained at height not exceeding 7½ feet from the mill sheeting or bottom floors of the millhouse, and all the land in lot 81 was conveyed to the grantee. It is evident that the purpose of this provision was to fix the boundaries of the pond and the land conveyed by the deed.

There was evidence that the water in the pond was low, and that, if the water were maintained at the height called for in the

deed, it would cover the timber that was cut. There was evidence that, during the lifetime of W. D. Herring, he cut timber from out of the pond without objection from anyone. A witness testified that, during the lifetime of J. P. Prescott, and after the date of the deed to W. D. Herring, the witness cut timber for Prescott and that he cut around the pond; that Prescott told the witness to cut down to the edge of the bushes around the pond and down to the edge of the pond. The defendant introduced into evidence a deed from W. D. Herring to C. T. Corbett dated November 4, 1924, conveying one and one-half acres of land, more or less, in the northeast corner of lot 81; but there is evidence that the alleged trespass did not take place upon this land or upon the land in lot 81 described in a deed from Mary E. Carter to J. P. Prescott, which deed was also introduced by the defendant. Furthermore, this latter deed is dated January 1, 1909, while the deed from Prescott to Herring is dated October 3, 1921. There was sufficient evidence to authorize the verdict in favor of the plaintiffs, enjoining the defendant from further acts of trespass, and the general grounds of the motion for new trial are without merit. Inasmuch as a verdict for the defendant was not demanded by the evidence, there was no error in denying the defendant's motion for a directed verdict and in denying the motion for judgment notwithstanding the verdict.

■ Special grounds 5, 6, 7, and 8 of the motion for new trial complain that a portion of the charge conflicted with other parts of the charge and instructed the jury upon conflicting principles of law; and that, in view of said charge, it was error to submit any issue of fact to the jury. The court charged as follows: "The defendant is entitled to prevent the plaintiff from prevailing in this case, if it appears from the evidence by a preponderance thereof, that before he died he conveyed by a deed to someone other than the plaintiff, the property in question or any part thereof. It appears from the uncontradicted evidence in this case that W. D. Herring before his death conveyed the property to J. C. Watts and that it was never reconveyed to W. D. Herring before his death, therefore the defendant is entitled to a verdict at your hands and you should find for the defendant." Immediately following this charge, the court charged upon the form of verdict which should be rendered if the plaintiff prevailed and

the form if the defendant should prevail. Previously the court had charged generally upon the principles of law made by the pleadings and the evidence. While it was error for the court to charge that, under the uncontradicted evidence, the defendant was entitled to a verdict, inasmuch as such a charge was not authorized by the evidence, the charge complained of was favorable to the defendant and presented the issues of the case more favorably to the defendant than was authorized by the evidence. These grounds do not show that the defendant was harmed by the charges excepted to, and are therefore without merit. *Childers* v. *Ackerman Construction Co.*, 211 *Ga.* 350, 353 (86 S. E. 2d 227).

■ Special grounds 9, 10, and 11 assign error upon the verdict as being contrary to portions of the court's charge set out in these grounds because, it is contended, the evidence demanded a finding in favor of the defendant as to the issues submitted to the jury in these portions of the charge. The evidence did not demand a finding in favor of the defendant upon these issues, and these grounds are without merit.

■ Special ground 12 excepts to the failure of the court in its charge to instruct the jury that the land conveyed by the deed from J. P. Prescott to W. D. Herring was confined to the northeast corner of lot 81. This contention, as held in division 2 above, is not correct. This ground is without merit.

6. Special ground 13 excepts to the failure of the court in its charge to construe the deed mentioned above as to the land conveyed thereby. This special ground alleges that the language of the deed is unambiguous, and with this we agree. No issue as to a construction of the deed is made by the pleadings in the case, and the evidence does not directly raise such an issue. If the defendant desired a more detailed instruction upon the terms of the deed he should have made a timely written request therefor. This ground is without merit.

*Judgment affirmed. All the Justices concur.*